CORRIGAN, J.
Defendant was arrested for operating a motor vehicle while under the influence of intoxicating liquor or with an unlawful blood alcohol level (OUIL/UBAL), a violation of MCL 257.625(l)(a) or (b). Following defendant’s arrest, defendant agreed to take a police officer-administered chemical breath test of defendant’s bodily alcohol level. Under MCL 257.625a(6)(d), after having agreed to take the police-administered test, defendant was entitled to “a reasonable opportunity to have a person of his or her own choosing administer” an independent chemical test. The prosecution does not dispute the district court’s ruling that the statute was violated.
We granted leave to appeal in this case and directed the parties to include among the issues briefed: (1) whether dismissal is the proper remedy for the denial of *440 an independent chemical test in violation of MCL 257.625a(6)(d); and (2) whether People v Koval, 371 Mich 453; 124 NW2d 274 (1963), was correctly decided. 474 Mich 886 (2005).
We conclude that because the statute does not specify a remedy, dismissal is not warranted for a statutory violation. In so holding, we specifically overrule Koval, supra, and its progeny. We hold, however, that when the trial court determines that the defendant was deprived of his or her right to a reasonable opportunity for an independent chemical test under MCL 257.625a(6)(d), the court may instruct the jury that the defendant’s statutory right was violated and that the jury may decide what significance to attach to this fact. We also hold that defendant’s due process right to present a defense was not violated.
I. FACTS
Defendant was stopped by the police and arrested for OUIL/UBAL. The police transported defendant to jail and requested that he take a chemical breath test. Defendant agreed to take the test. It reflected that his body alcohol level was 0.21 grams per 210 liters of breath, plainly above the legal limit.[1] Defendant then asked the arresting officer to transport him to a medical facility in Indiana for an independent chemical test, but the officer refused to do so. Defendant next asked the officer to transport him to Watervliet Community Hospital, about a 15- to 20-minute drive from the jail. The officer again refused, but offered to take defendant to *441 Lakeland Hospital/St. Joseph Medical Center, a nearby location where the police routinely took suspects for chemical tests. Defendant refused this offer, apparently because he did not believe that he could obtain a truly independent test there. Consequently, defendant never received an independent test of his body alcohol level.
Defendant was charged with OUIL, second offense, and/or UBAL, second offense, MCL 257.625(l)(a) or (b); MCL 257.625(8)(b).[2] Defendant moved to dismiss the charges because the arresting officer unreasonably denied his request for an independent chemical test under MCL 257.625a(6)(d). The district court found defendant’s request to go to the Indiana hospital unreasonable because the officer would have had to travel outside his jurisdiction. But the district court found that defendant’s request to go to Watervliet Hospital for an independent chemical test was reasonable, and that the officer violated MCL 257.625a(6)(d) by failing to honor defendant’s request. The court determined that dismissal of the charges would be an “inappropriate and somewhat draconian” remedy because defendant was not completely denied his right to an independent chemical test, because he was given the opportunity to obtain such a test at Lakeland Hospital. Instead, the court held that suppression of the results of the police-administered chemical test was the proper remedy.
The Berrien County Trial Court reversed, ruling that Koval and its progeny interpreting MCL 257.625a had consistently held that dismissal was the appropriate remedy for the unreasonable denial of an independent chemical test. The court held that the Legislature would have specifically provided for a different remedy or amended the statute to provide for a different *442 remedy if it had not intended for the remedy to be dismissal. Instead, the Legislature had silently acquiesced to the remedy of dismissal by not amending the statute in light of Koval and subsequent Court of Appeals decisions holding that dismissal is the appropriate remedy. The trial court then remanded to the district court for entry of an order dismissing the charges.
The Court of Appeals affirmed. People v Anstey, unpublished opinion per curiam of the Court of Appeals, issued February 8, 2005 (Docket No. 255416). We granted the prosecution’s application for leave to appeal. 474 Mich 886 (2005).
II. STANDARD OF REVIEW
The prosecutor challenges whether dismissal of the charges against defendant was appropriate under MCL 257.625a(6)(d). Questions of statutory interpretation are questions of law that this Court reviews de novo. People v Denio, 454 Mich 691, 698; 564 NW2d 13 (1997).
III. ANALYSIS
A. MCL 257.625a(6)(d)
The question before this Court is whether the Legislature intended that a violation of MCL 257.625a(6)(d) should result in dismissal of the case because the officer unreasonably denied defendant’s request for an independent chemical test administered by a person of his own choosing.[3] “The primary goal in construing a statute is ‘to give effect to the intent of the Legislature.’ *443 We begin by examining the plain language of the statute.” People v Stewart, 472 Mich 624, 631; 698 NW2d 340 (2002) (citations omitted).
The right to a reasonable opportunity to have an independent chemical test is created by statute, MCL 257.625a(6)(d):
A chemical test described in this subsection shall be administered at the request of a peace officer having reasonable grounds to believe the person has committed a crime described in section 625c(l). A person who takes a chemical test administered at a peace officer’s request as provided in this section shall be given a reasonable opportunity to have a person of his or her own choosing administer 1 of the chemical tests described in this subsection within a reasonable time after his or her detention. The test results are admissible and shall be considered with other admissible evidence in determining the defendant’s innocence or guilt. If the person charged is administered a chemical test by a person of his or her own choosing, the person charged is responsible for obtaining a chemical analysis of the test sample. [Emphasis added.]
Notably, the Legislature did not specify what remedy to apply if a police officer failed to advise, or denied, a defendant of his or her right to a reasonable opportunity to obtain an independent chemical test.
By contrast, the Legislature has clearly specified that if a prosecutor fails to comply with subsection 8 of MCL 257.625a, the remedy available to a defendant for violation of subsection 8 of the statute is suppression of the results of the state-administered chemical test.[4] *444 Had the Legislature intended a comparable remedy for a violation of subsection 6(d) — or even the more drastic remedy of dismissal — it could have so specified. People v Monaco, 474 Mich 48, 58; 710 NW2d 46 (2006) (citation omitted) (“ ‘Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute ....’”).
MCL 257.625a(7) is also noteworthy. At the time defendant was arrested, MCL 257.625a(7) provided, in pertinent part, as follows:[5]
The provisions of subsection (6) relating to chemical testing do not limit the introduction of any other admissible evidence bearing upon the question of whether a person was impaired by, or under the influence of, intoxicating liquor ...[6]
Subsection 7 indicates that, notwithstanding the provisions regarding chemical testing evidence set forth in subsection 6, the Legislature intended to allow the prosecution to go forward on other evidence establishing impaired operation of a motor vehicle. Given this statutory language, a prosecutor could adduce evidence relating to a defendant’s erratic driving, inability to perform field sobriety tests, or slurred speech, as well as other evidence tending to establish the defendant’s *445 impairment. Reading this subsection together with subsection 6, it would seem that the Legislature’s intent, whether or not MCL 257.625a(6)(d) was violated, was to permit a prosecutor to go forward under MCL 257.625(l)(a) (OUIL) using other evidence, beyond chemical testing, to establish guilt. Dismissal, therefore, was not an anticipated remedy.[7]
*446 Notwithstanding the absence of statutory language mandating dismissal for a violation of MCL 257.625a(6)(d), the trial court and the Court of Appeals held that dismissal of the charges against defendant was required because of this Court’s ruling in Koval, supra. This Court interpreted a previous version of MCL 257.625a(6)(d) in Koval, supra. In that case, the defendant was stopped for driving while intoxicated. Koval, supra at 456-457. The police officers failed to advise the defendant of his right to have an independent chemical test, contrary to the defendant’s statutory right.[8] The previous version of the statute, like the *447 present version, did not provide a remedy. This Court held that noncompliance with the mandatory statutory requirement required dismissal of the charges against the defendant. Id. at 459. In reaching this conclusion, this Court cited the mandatory form of the statute and noted that the statute “was enacted for the protection and benefit of a defendant charged with operating a motor vehicle while under the influence of intoxicating liquor.” Id. at 458.[9]
As discussed, the text of the statute makes clear that the Legislature did not intend the remedy of dismissal to follow from a violation of the right to a reasonable opportunity for an independent chemical test. Additionally, our case law supports the conclusion that neither dismissal nor suppression of the evidence is an appropriate remedy for a violation of MCL 257.625a(6)(d). In People v Hawkins, 468 Mich 488, 512-513; 668 NW2d 602 (2003), this Court held that the exclusionary rule is “a harsh remedy designed to sanction and deter police *448 misconduct where it has resulted in a violation of constitutional rights . ..(Emphasis partially deleted.) This appeal also involves violation of a statutory right, not a constitutional right.[10] This Court “reaffirm[ed] that where there is no determination that a statutory violation constitutes an error of constitutional dimensions, application of the exclusionary rule is inappropriate unless the plain language of the statute indicates a legislative intent that the rule be applied.” Id. at 507. Where there is nothing in the statutory language indicating that the exclusionary rule applies to a violation of a statute, this Court should decline to infer such legislative intent, because “[t]o do otherwise would be an exercise of will rather than judgment.” People v Stevens (After Remand), 460 Mich 626, 645; 597 NW2d 53 (1999) (emphasis in original). This Court has repeatedly applied these principles in holding that suppression of the evidence is not an appropriate remedy for a statutory violation where there is no indication in the statute that the Legislature intended such a remedy and no constitutional rights were violated. See, e.g., Hawkins, supra; People v Hamilton, 465 Mich 526; 638 NW2d 92 (2002), overruled in part on other grounds in Bright v Ailshie, 465 Mich 770, 775 n 5; 641 NW2d 587 (2002); People v Sobczak-Obetts, 463 Mich 687; 625 NW2d 764 (2001);[11] and Stevens, supra. Applying similar reasoning, we hold that dismissal, which is an even more drastic remedy, is not an appropriate remedy for a *449 statutory violation unless the statute clearly provides otherwise. The language of MCL 257.625a does not reveal that the Legislature intended to impose the drastic remedy of dismissal or suppression of the evidence when an officer fails to give a defendant a reasonable opportunity for an independent chemical test. Accordingly, neither of these remedies is appropriate for a violation of MCL 257.625a(6).[12] We overrule Koval’s holding to the contrary.[13]
But while the text of MCL 257.625a shows that the Legislature did not intend that dismissal or suppression of the evidence follow from a violation of subsection 6(d), the language of the statute does not render this Court powerless to act in the face of a police agency’s violation of a defendant’s statutory right to obtain potentially exculpatory evidence under MCL *450 257.625a(6)(d). Through MCL 257.625a(6)(d), the Legislature conferred on defendants a statutory right to develop potentially exculpatory evidence to refute the results of a police-administered chemical test. Thus, when a police officer denies a defendant his or her statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing, the officer prevents the defendant from exercising a statutory right to discover potentially favorable evidence in his or her defense.
The jury should be permitted to weigh the police officer’s wrongful conduct as well as the statutory right that the officer denied. When the defendant argues before trial that he or she was deprived of a reasonable opportunity for an independent chemical test, the trial court must determine, after an evidentiary hearing if necessary, whether the defendant was in fact deprived of this statutory right. If the court determines that a statutory violation occurred, then it is free, upon request of defense counsel, to inform the jury of this violation and instruct the jury that it may determine what weight to give to this fact. Such a jury instruction is an appropriate consequence for the violation of a mandatory statutory right to a reasonable opportunity for an independent chemical test because it will accord meaning to the right created in subsection 6(d) without creating a remedy that the Legislature did not intend. A jury instruction will also presumably deter police officers from violating that right in the future. We offer the following possible instruction for violations of MCL 257.625a(6)(d):
Our law provides that a person who takes a chemical test administered at a peace officer’s request must be given a reasonable opportunity to have a person of his or her own choosing administer an independent chemical test. The defendant was denied such a reasonable opportunity for an independent chemical test. You may determine what sig *451 nificance to attach to this fact in deciding the case. For example, you might consider the denial of the defendant’s right to a reasonable opportunity for an independent chemical test in deciding whether, in light of the nonchemical test evidence, such an independent chemical test might have produced results different from the police-administered chemical test.[14]
The court’s authority to give such an instruction derives from the inherent powers of the judiciary. Const 1963, art 6, § 5, entrusts this Court with the authority and duty to prescribe general rules governing the practice and procedure in all courts in the state.[15] See People v Glass (After Remand), 464 Mich 266, 281; 627 NW2d 261 (2001). “ ‘It is also well settled that under our form of government the Constitution confers on the judicial department all the authority necessary to exercise its powers as a coordinate branch of government.’ ” Maldonado v Ford Motor Co, 476 Mich 372, 390; 719 NW2d 809 (2006), quoting In re 1976 PA 267, 400 Mich 660, 662-663; 255 NW2d 635 (1977). The judicial powers derived from the constitution may not be diminished, exercised, or interfered with by other branches of the government. Lapeer Co Clerk v Lapeer Circuit Court, 469 Mich 146, 162; 665 NW2d 452 (2003). Exercising this authority, our Court has enacted court rules that require the trial court to instruct the jury on the applicable law and give the court the discretion to comment on the evidence:
Before or after arguments or at both times, as the court elects, the court shall instruct the jury on the applicable *452 law, the issues presented by the case, and, if a party requests as provided in subrule (A)(2), that party’s theory of the case. The court, at its discretion, may also comment on the evidence, the testimony, and the character of the witnesses as the interests of justice require. [MCR 2.516(B)(3).][16]
Additionally, the Legislature has directed the judiciary to instruct the jury on the law and permitted a court to comment on the evidence:
It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. [MCL 768.29.]
Thus, the judiciary has the authority and obligation under both court rule and statute to instruct the jury on the applicable law and the discretionary power to comment on the evidence as justice requires. The Legislature has not stripped the judiciary of these powers in this context.[17]
*453 It is also well-established in our case law that the trial court must instruct the jury on the law applicable to the facts of the case:
“ [I]t is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case.” [People v Henry, 395 Mich 367, 373-374; 236 NW2d 489 (1975), quoting People v Murray, 72 Mich 10, 16; 40 NW 29 (1888).]
The trial court must instruct the jury not only on all the elements of the charged offense, but also, upon request, on material issues, defenses, and theories that are supported by the evidence. People v Rodriguez, 463 Mich 466, 472-473; 620 NW2d 13 (2000); People v Reed, 393 Mich 342, 349-350; 224 NW2d 867 (1975).
The trial court’s authority to comment on the evidence encompasses the power to summarize the evidence relating to the issues, call the jury’s attention to particular facts, People v Lintz, 244 Mich 603, 617; 222 NW 201 (1928), and “point out the important testimony so as to lead the jury to an understanding of its bearings,” Richards v Fuller, 38 Mich 653, 657 (1878). The trial court’s comments must be fair and impartial, Burpee v Lane, 274 Mich 625, 627; 265 NW 484 (1936), and the court should not make known to the jury its own views regarding disputed factual issues, People v Young, 364 Mich 554, 558; 111 NW2d 870 (1961), the credibility of witnesses, People v Clark, 340 Mich 411, *454 420-421; 65 NW2d 717 (1954), or the ultimate question to be submitted to the jury, Lintz, supra at 617-618.[18]
The instruction we offer falls within the court’s inherent authority to instruct the jury on the law applicable to the case and the discretionary power to comment on the evidence.[19] A defendant who is denied the statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing may advance the defense that the police-administered test was inaccurate,[20] and that *455 the police deprived him or her of the opportunity to raise a reasonable doubt of guilt through an independent test. The trial court may instruct and inform the jury on the requirements of MCL 257.625a(6)(d) and properly comment on the evidence by bringing to the jury’s attention that the defendant’s statutory right has been violated. Such an impartial instruction will communicate no opinion and compel no outcome, but will only inform the jury of the law and the facts and allow the jury to draw its own conclusions. Thus, it will not encroach upon the exclusive province of the jury to weigh the testimony and draw inferences therefrom. *456 People v Larco, 331 Mich 420, 430; 49 NW2d 358 (1951); People v Dupree, 175 Mich 632, 639; 141 NW 672 (1913).
Such an instruction will also advance the judiciary’s duty to assist the jury in ascertaining the truth. The late Joseph D. Grano once stated that “the goal of discovering the truth should play a dominant role in designing the rules that govern criminal procedure.” Grano, Confessions, Truth, and the Law (Ann Arbor, The University of Michigan Press, 1993), p 6; see also Grano, Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure—Part I, 32 Wayne L R 1007, 1011, 1018 (1986); and Grano, Special issue: Introduction — The changed and changing world of constitutional criminal procedure: The contribution of the Department of Justice’s Office of Legal Policy, 22 U Mich J L Reform 395, 402-404 (1989). In analyzing the underlying purposes and objectives of procedural reform, Grano stated:
[T]he primary objective of criminal procedure is to facilitate the ascertainment of truth. To some extent, therefore, fairness must encompass this concern. Accordingly, rules are unfair when they do not provide either party an adequate opportunity to develop and present his case. The special concern with fairness for the defendant, however, stems from the special abhorrence of erroneous conviction. Thus, basic agreement exists that a rule is unfair if it denies the defendant an adequate opportunity to defend against the charges. [Grano, Implementing the objectives of procedural reform: The proposed Michigan Rules of Criminal Procedure — Part I, 32 Wayne L R 1007, 1018 (1986).]
Promoting the truth-seeking process is one of the judiciary’s primary goals in determining the appropriate action to take when one party prevents the other from obtaining evidence. Justice MARKMAN has explained that “[t]he discovery of the truth is essential to *457 the successful operation of the system’s mechanisms for controlling crime and mitigating its consequences.” Mark-man, Special issue: Foreword: The “truth in criminal justice” series, 22 U Mich J L Reform 425, 428 (1989).[21]
By placing all the facts before the fact-finder, the instant instruction will further the pursuit of the truth and give real effect to the right in MCL 257.625a(6)(d). This instruction will promote a basic premise of our justice system, that providing more, rather than less, information will generally assist the jury in discovering the truth. It will communicate an accurate account of what transpired and allow the jurors to apply the law to the facts as they decide. Where evidence or a witness is unavailable or compromised because of the conduct of prosecutors and police officers, the court should not keep more evidence away from the jurors, but should rather give the jurors all the pertinent information, including what has been denied to them, and allow them to assess the consequences.[22]
*458 Prohibiting the trial court from instructing the jury regarding a violation of MCL 257.625a(6)(d) would keep relevant information from the jury by concealing the denial of the defendant’s statutory right to develop potentially exculpatory evidence. Not only would this impede the jury’s search for the truth, but it would permit police officers to ignore a defendant’s mandatory statutory right to a reasonable opportunity for an independent chemical test administered by a person of his own choosing without consequence. Thus, in light of our general power to instruct and comment on the evidence in criminal cases, and the trial’s goal of promoting the search for truth, we conclude that in these narrow circumstances, the courts may give a jury instruction informing the jury that MCL 257.625a(6)(d) was violated.
*459 While we hold that the trial court may give a jury instruction where there is a violation of MCL 257.625a(6)(d), an instruction is not necessarily appropriate for a violation of every statutory right where the statute does not provide a remedy. It is appropriate in this case because it gives meaning to the statutory right to a reasonable opportunity for an independent chemical test administered by a person of his or her own choosing and is consistent with the judicial power to instruct on the law and comment on the evidence in the interests of justice. We limit application of the instruction to the statute at issue.
B. DUE PROCESS
Defendant argues that the violation of MCL 257.625a(6)(d) also violated his due process right to present a defense. Because the parties dispute whether a constitutional violation occurred and Justice CAVANAGH argues that defendant’s due process rights were violated, we address the constitutional issue despite the lower courts’ decisions not to base their rulings on any constitutional violation.[23] But we address only the constitutional issue and offer no opinion on the correctness of the district court’s ruling that the officer violated the statute, because that is not at issue in this case.
*460 A criminal defendant has a right to present a defense under our state and federal constitutions. US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20; People v Hayes, 421 Mich 271, 278; 364 NW2d 635 (1984). “[T]he right to present a defense is a fundamental element of due process .. . .” Id. at 279. In Pennsylvania v Ritchie, 480 US 39, 56; 107 S Ct 989; 94 L Ed 2d 40 (1987), the United States Supreme Court stated, “Our cases establish, at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt.”
Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense. To safeguard that right, the Court has developed “what might loosely he called the area of constitutionally guaranteed access to evidence.” United States v. Valenzuela-Bernal, 458 U.S. 858, 867[ 102 S Ct 3440; 73 L Ed 2d 1193] (1982). Taken together, this group of constitutional privileges delivers exculpatory evidence into the hands of the accused, thereby protecting the innocent from erroneous conviction and ensuring the integrity of our criminal justice system. [California v Trombetta, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984).]
Defendant argues that his due process right to obtain potentially exculpatory evidence was violated under Arizona v Youngblood, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), because the officer acted in bad faith in denying defendant’s request to be taken to Watervliet Hospital for an independent chemical test. We disagree. In Youngblood, supra at 57-58, the United States Supreme Court held that the government’s failure to preserve potentially exculpatory evidence violates a criminal defendant’s due process rights if the *461 defendant can show bad faith on the part of the government. Youngblood is distinguishable because it involves the government’s failure to disclose existing evidence in its possession, where the instant case involves defendant’s right to develop potentially exculpatory evidence not in the government’s possession.[24] For due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance. People v Stephens, 58 Mich App 701, 705; 228 NW2d 527 (1975). Defendant has cited no cases holding that Youngblood and its progeny apply when the government fails to turn over evidence that has yet to be developed. Because the instant case involves, the failure to develop evidence, as opposed to the failure to disclose existing evidence, the bad-faith test in Youngblood is inapplicable.
Defendant’s right to present a defense was not violated because the police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence. Just as the police have no constitutional duty[25] to perform any chemical tests, Youngblood, supra *462 at 59,[26] they have no constitutional duty to assist the defendant in obtaining an independent chemical test.[27] See, e.g., In re Martin, 58 Cal 2d 509, 512; 374 P2d 801; 24 Cal Rptr 833 (1962) (in holding that the police are not required to assist a defendant in obtaining a chemical test, the California Supreme Court explained that “police officers are not required to take the initiative or even to assist in procuring evidence on behalf of a defendant which is deemed necessary to his defense”); and People v Finnegan, 85 NY2d 53, 58; 647 NE2d 758, 623 NYS2d 546 (1995) (“law enforcement personnel are not required to arrange for an independent test or to transport defendant to a place or person where the test may be performed” because “police have no affirmative duty to gather or help gather evidence for an accused”). Thus, the police have no constitutional duty to take affirmative action to transport the defendant from the place of his or her incarceration to a hospital of his or her choice for the requested test. State v Choate, 667 SW2d 111, 113 (Tenn Crim App, 1983) (where the *463 defendant argued that he had a constitutional right to police assistance in obtaining an independent chemical test whether or not he complied with the statute requiring him to take a police-administered test, the court held that the police have no “affirmative [constitutional] duty to make a blood test available to the defendant by transporting him from the place of his incarceration to a hospital for the requested test”). Thus, the officer’s actions in the instant case did not violate defendant’s due process rights because the officer had no constitutional duty to assist defendant in obtaining an independent chemical test by transporting defendant to Watervliet Hospital.[28]
IV CONCLUSION
The statutory text does not reflect that the Legislature intended either dismissal or suppression of the evidence to be the remedy for a violation of MCL 257.625a(6)(d). Accordingly, we overrule Koval and its progeny. Instead, we hold that a permissive jury instruction may be appropriate when the trial court has determined that there was a violation of MCL 257.625a(6)(d). When the Legislature established the right of a defendant to seek an independent chemical test, it intended to allow that defendant to use the test to rebut evidence produced by the prosecutor at trial. A jury instruction will give meaning to that right by placing all relevant information, including the requirements of the statute, before the fact-finder. Such an instruction in this circumstance is an appropriate func *464 tion of the judicial power that will ensure the integrity of the criminal trial and further the pursuit of the truth. We also hold that defendant’s due process right to present a defense was not violated.
We reverse the judgment of the Court of Appeals and remand the matter to the trial court for reinstatement of the charges against defendant. At trial, the results of the police-administered chemical test shall be admissible, but the trial court may instruct the jury that the police violated defendant’s statutory right to a reasonable opportunity for an independent chemical test.
Taylor, C. J., and Young and Markman, JJ., concurred with Corrigan, J.

 At the time defendant was arrested, MCL 257.625(1) set the statutory intoxication threshold at a body alcohol content of 0.10 grams per 100 milliliters of blood, per 210 liters of breath, or per 67 milliliters of urine. Pursuant to 2003 PA 61, however, the statutory intoxication threshold has been reduced from 0.10 to 0.08.

 MCL 257.625(8)(b) has since been redesignated as MCL 257.625(9)(b).

 We offer no opinion regarding whether the district court correctly ruled that the police violated MCL 257.625a(6)(d). But because the prosecution does not challenge the district court’s ruling, we assume for purposes of this section of the opinion that the statute was violated.

 MCL 257.625a(8) provides:
If a chemical test described in subsection (6) is administered, the test results shall be made available to the person charged or the person’s attorney upon written request to the prosecution, with a copy of the request filed with the court. The prosecution shall furnish the results at least 2 days before the day of the trial. *444 The prosecution shall offer the test results as evidence in that trial. Failure to fully comply with the request bars the admission of the results into evidence by the prosecution. [Emphasis added.]

 Koval and its progeny did not address this subsection (or its then-existing equivalent) in determining that dismissal of charges was the appropriate remedy for an unreasonable denial of the right to an independent chemical test.

6 Subsection 7 was amended in 2003 to provide, in pertinent part: “The provisions of subsection (6) relating to chemical testing do not limit the introduction of any other admissible evidence bearing upon any of the following questions . . ..” 2003 PA 61. Our analysis applies equally to the amended statute.

 Justice Cavanagh argues (and the trial court held) that the Legislature’s decision not to add a remedy to MCL 257.625a(6)(d) in post -Koval amendments to the statute indicates the Legislature’s agreement with the Koval Court’s interpretation of the statute. Justice Cavanagh, however, ignores our holding in Neal v Wilkes, 470 Mich 661, 668 n 11; 685 NW2d 648 (2004):
[A]s we recently explained in People v Hawkins, 468 Mich 488, 507-510; 668 NW2d 602 (2003), neither “legislative acquiescence” nor the “reenactment doctrine” may “be utilized to subordinate the plain language of a statute.” “Legislative acquiescence” has been repeatedly rejected by this Court because “Michigan courts [must] determine the Legislature’s intent from its words, not from its silence.” Donajkowski v Alpena Power Co, 460 Mich 243, 261; 596 NW2d 574 (1999). Although, where statutory language is ambiguous, the reenactment doctrine may be a more useM tool of construction, “in the absence of a clear indication that the Legislature intended to either adopt or repudiate this Court’s prior construction, there is no reason to subordinate our primary principle of construction — to ascertain the Legislature’s intent by first examining the statute’s language — -to the reenactment rule.” Id. at 508-509. [Emphasis in original.]
Because MCL 257.625a(6)(d) omits a remedy for a violation of the right to a reasonable opportunity for an independent chemical test, the reenactment doctrine is inapplicable. Contrary to Justice Cavanagh’s argument, we do not hold that the Legislature left ambiguous the remedy for a violation of the statute. Because the Legislature did not provide a remedy in the statute, we may not create a remedy that only the Legislature has the power to create. Our holding that the judiciary has the inherent authority to instruct the jury regarding a violation of the statute does not create such a remedy.
Further, the amendments to MCL 257.625a(6)(d) do not clearly demonstrate through words the Legislature’s intention to adopt or repudiate Koval’s interpretation of the statute. Justice Cavanagh errone *446 ously focuses on the Legislature’s silence rather than its words. We interpret the statute by examining its plain language and by employing applicable rules of statutory construction. In arguing that dismissal is the appropriate remedy for a violation of MCL 257.625a(6)(d), Justice Cavanagh disregards the text of the statute and the rule of statutory construction that courts cannot assume that the Legislature inadvertently omitted language from one portion of the statute that it placed in another portion of the statute. Monaco, supra at 58. It is Justice Cavanagh, not the majority, that “chooses to disregard rules of statutory construction ....” Post at 473.
Further, we reject Justice Cavanagh’s contention that our holding fails to give meaning to the word “shall” in the statute. While Justice Cavanagh correctly argues that the word “shall” indicates that the right to a reasonable opportunity for an independent chemical test is mandatory, this is not the issue before us. Bather, the issue is what consequences the Legislature intended when this mandatory right is violated.

 At the time, the pertinent language of the statute provided as follows:
“(3) A person charged with driving a vehicle while under the influence of intoxicating liquor shall be permitted to have a licensed physician or registered nurse, under the supervision of a physician of his own choosing, administer a chemical test as provided in this section within a reasonable time after his detention, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. Any person charged with driving a vehicle while under the influence of intoxicating liquor shall have the right to demand that *447 the test provided for in this section must he given him, provided facilities are reasonably available to administer such test, and the results of such test shall be admissible if offered by the defendant and shall be considered with other competent evidence in determining the innocence or guilt of the defendant. The defendant shall he advised of his right to the test provided for in this subsection.” [Koval, supra at 455-456.]

 Several Court of Appeals opinions decided after Koval have held or recognized that dismissal is the appropriate remedy for a violation of the right to a reasonable opportunity for an independent chemical test. See, e.g., People v Green, 260 Mich App 392, 407; 677 NW2d 363 (2004), People v Prelesnik, 219 Mich App 173, 181; 555 NW2d 505 (1996), overruled on other grounds in People v Wager, 460 Mich 118, 123-124; 594 NW2d 487 (1999), People v Hurn, 205 Mich App 618, 620; 518 NW2d 502 (1994), People v Dicks, 190 Mich App 694, 701; 476 NW2d 500 (1991), People v Willis, 180 Mich App 31, 37; 446 NW2d 562 (1989), People v Underwood, 153 Mich App 598, 600; 396 NW2d 443 (1986), and People v Burton, 13 Mich App 203, 207; 163 NW2d 823 (1968). We overrule these cases, along with Koval.

 See our discussion of the due process issue later in this opinion.

 We are puzzled by Justice Cavanagh’s decision to single out our “analysis” of Sobczak-Obetts, supra, and distinguish it on its facts. We list Sobczak-Obetts, supra, only as an example of a case in which this Court held that suppression of the evidence is not an appropriate remedy for a statutory violation where there is no indication in the statute that the Legislature intended such a remedy and no constitutional rights were violated. We do not hold that the statutes in Sobczak-Obetts, supra, are similar to MCL 257.625a(6)(d).

 Further, neither dismissal nor suppression of the results of the police-administered chemical test is appropriate because these remedies would put the prosecution in a worse position than if the police officer’s improper conduct had not occurred. Stevens, supra at 640-641. Moreover, the exclusionary rule is inappropriate because the rule “forbids the use of direct and indirect evidence acquired from governmental misconduct," and there is no causal relationship between the officer’s failure to provide defendant with a reasonable opportunity for an independent chemical test and the police-administered chemical test. Sobczak-Obetts, supra at 710 (emphasis in original and citations omitted); see also Hudson v Michigan,_US_,_; 126 S Ct 2159, 2163-2165; 165 L Ed 2d 56, 64-65 (2006). Finally, suppression is not an appropriate remedy for a violation of the statute, because the loss of evidence should not be remedied by preventing the jury from considering more relevant evidence. Rather than promoting the truth-seeking function at trial, suppression of the evidence exacts a “ ‘ “costly toll” upon truth-seeking and law enforcement objectives ....’” Id._US_; 126 S Ct 2163; 165 L Ed 2d 64, quoting Pennsylvania Bd of Probation & Parole v Scott, 524 US 357, 364; 118 S Ct 2014; 141 L Ed 2d 344 (1998).

 We do not, as Justice Cavanagh contends, “simply close the books and end the inquiry” at this point. Post at 470-471. Rather, the remainder of our opinion is dedicated to determining what course of action a trial court may take when a statutory violation occurs.

14 This proposed instruction incorporates language from MCL 257.625a(6)(d).

 “The supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state.” Const 1963, art 6, § 5.

16 The rules of criminal procedure also require the trial court to instruct the jury on the applicable law:
After closing arguments are made or waived, the court must instruct the jury as required and appropriate, but at the discretion of the court, and on notice to the parties, the court may instruct the jury before the parties make closing arguments, and give any appropriate further instructions after argument. After jury deliberations begin, the court may give additional instructions that are appropriate. [MCR 6.414(H).]

 In some situations, the Legislature has forbidden a trial court from instructing a jury with regard to certain matters. For example, a trial court may not instruct on the limits on noneconomic damages in products liability and medical malpractice actions. MCL 600.2946a(2) and MCL *453 600.6304(5). The Legislature has not restricted the trial court’s authority to give jury instructions in the context of a violation of MCL 257.625a(6)(d).

 In People v Ward, 381 Mich 624, 628-629; 166 NW2d 451 (1969), this Court explained that the court’s authority to instruct the jury and comment on the evidence must be discharged separately:
The trial judge’s twofold authority to instruct the jury on the law and to make such comment upon the evidence, the testimony, and the witnesses as, in his opinion, the interest of justice may require is severable and must he discharged separately. When a trial judge instructs upon the law he must do so affirmatively. So far as the jury is concerned, the law is what the judge says it is. They have the duty to follow his instructions on the law.
As to the court’s comment upon the evidence, such comments are not bindingupon the jury. They do not delineate the jury’s duty and they must be prefaced by words which leave the jury free to disregard them in good conscience.

 We do not, as Justice Weaver states, “rewrite the statute from the bench.” Post at 467. Our holding that the court has the authority to instruct the jury that the statute was violated does not usurp the Legislature’s authority by supplying a remedy that does not exist in the statute. Eather, our holding is based on the inherent power of the judiciary to instruct on the law and comment on the evidence.

 Justice CAVANAGH is incorrect that “the defendant is left with absolutely no meaningful way to refute the prosecutor’s chemical evidence against him in a criminal trial.” Post at 476 (emphasis in original). An independent chemical test is not the only way a defendant may challenge the accuracy of the pohce-administered test. See California v Trombetta, 467 US 479, 490; 104 S Ct 2528; 81 L Ed 2d 413 (1984) (listing alternative ways in which the defendant could challenge the results of the Intoxilyzer test). For example, a defendant may introduce evidence that the machine *455 used to administer the chemical test (in this case a breathalyzer) was improperly calibrated or maintained. A defendant may also adduce nonchemical evidence, such as the testimony of a toxicology expert, who can give an expert opinion on the defendant’s body alcohol level based on the number of drinks the defendant consumed over a course of time. Despite the concerns raised in the article cited by the dissent, the Hawaii Supreme Court has more recently opined that the “Widmark formula,” which estimates an individual’s body alcohol level based on weight and gender, the type and amount of alcohol, the absorption rate and the elimination rate, is “widely viewed as reliable.” State v Vliet, 95 Hawaii 94, 112; 19 P3d 42 (2001). Further, the extrapolation of a “range” within which a defendant’s body alcohol level falls could be very helpful, if believed by the jury, by raising a reasonable doubt that the defendant was operating a motor vehicle with an unlawful blood alcohol level. See, e.g., State v Preeee, 971 P2d 1, 7-8 (Utah App, 1998) (holding that the trial court committed error requiring reversal by not permitting the defendant to introduce evidence that, under the “Widmark formula,” his body alcohol level could have been below the legal limit at the time he was stopped by the police).
Moreover, a defendant can challenge the accuracy of the police-administered chemical test itself, as well as the method by which it was operated when the police obtained his or her breath sample. Thus, contrary to the dissent’s assertion, the results of a police-administered chemical test are not “indisputable.” See, e.g., Trombetta, supra at 490 (noting that the results of an Intoxilyzer test can he challenged in a variety of ways, including “faulty calibration, extraneous interference with machine measurements, and operator error”).

 We reject Justice Cavanagh’s argument that dismissal of the charges better serves the truth-seeking process than allowing the jury to consider the violation of the defendant’s statutory right to a reasonable opportunity for an independent chemical test. Dismissal does not merely prevent the jury from considering relevant evidence (as suppression of the evidence would), but it prevents the jury from considering the charges altogether. Such a remedy ensures that the truth will never be discovered. Conversely, a jury instruction that the statute was violated gives the jury all of the available relevant information. The instruction gives the defendant an adequate opportunity to defend himself by arguing that the police-administered test was inaccurate and that an independent test would have produced a different result.

 Additionally, MCL 257.625a(6)(d) places a procedural obligation on the police to enable a defendant to obtain relevant evidence. Police agencies will be deterred from breaching this obligation if they understand that jurors may consider the statutory violation at trial. An instruction will not only give concrete effect to a defendant’s statutory right to secure an independent chemical test, but it will deter future arbitrary use of police power by limiting the extent to which the state *458 benefits from its own wrongdoing. But unlike the harsh remedies of suppression or dismissal, a jury instruction will not seek to “punish” police agencies, but will rather give the jury relevant information that they may consider when rendering their verdict.
We reject Justice Cavanagh’s statements that the instruction “encourages” the police to violate MCL 257.625a(6)(d) and “reward[s]” the police for violating the statute. Post at 480 & n 6. Contrary to Justice Cavanagh’s argument, an instruction is a meaningful consequence, because it makes the jury aware that the police acted inappropriately by violating the statute. Making the jury aware that the police violated the law in no way “encourages” or “rewards” the police.
Further, Justice Cavanagh argues that a violation of the statutory right to an independent chemical test puts the police “in a superior position because they will hold the trump card of indisputable chemical evidence.” Post at 480 n 6 (emphasis in original). That argument contains two flaws. First, Justice Cavanagh wrongly assumes that the results of the independent chemical test would have been favorable to the defendant. Even if the results of the independent chemical test would have been favorable to the prosecution, the instruction allows the jury to make what they will of the statutory violation, including finding that the independent chemical test would have been favorable to the defendant. Second, the police-administered chemical test is not “undisputable” chemical evidence. The defendant has many effective ways to challenge this evidence. See n 20 of this opinion.

 The district court held that defendant’s request to go to Watervliet Hospital was reasonable, so the officer violated the statute in denying defendant’s request. The trial court, while stating that “a due process constitutional issue is implicated. .. since it relates to perishable evidence,” ultimately held that “[a] constitutional analysis is not required, since the statutory remedy [dismissal] is clear.” Unpublished opinion of the Berrien County Trial Court, issued April 20, 2004 (Docket No. 2003-411091-SD), slip op at 8, 9. The Court of Appeals also did not address any constitutional issues, holding instead that dismissal was warranted because of the officer’s violation of the statute.

 Justice Cavanagh argues that the defendant does not develop evidence when he or she takes an independent chemical test, apparently because the defendant’s blood and the alcohol in the defendant’s blood already exist. The evidence defendant sought, however, was not his own blood, but the results of a test measuring the alcohol content in his blood at the time he was arrested. Justice Cavanagh fails to see that these results simply do not exist, because the test was never administered.

 Justice Cavanagh quibbles with our use of the phrase “constitutional duty.” Though we did not think any explanation of this wording would be needed, we clarify for Justice Cavanagh that by “constitutional duty,” we mean that the police have a duty to honor the defendant’s constitutional rights. We see nothing misleading about the phrase “constitutional duty,” which the United States Supreme Court has used in this context. See, e.g., Youngblood, supra at 59 (“the police do not have a constitutional duty to perform any particular tests”); Hoffa v United States, 385 US 293, *462 310; 87 S Ct 408; 17 L Ed 2d 374 (1966) (“Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation ....”).

 In Youngblood, supra at 59, the United States Supreme Court stated that “the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests.”

 In attempting to distinguish the Finnegan case, Justice Cavanagh states that the plain language of MCL 257.625a(6)(d) creates an affirmative statutory duty on behalf of the police to assist a defendant in obtaining an independent chemical test. Justice Cavanagh relies on the language in the statute indicating that a defendant “shall be given a reasonable opportunity” to have a person of the defendant’s choosing administer the independent chemical test. The issue here, however, is whether the constitution requires that a defendant have a reasonable opportunity to obtain an independent chemical test. Because the parties have conceded that the statute had been violated, we need not address whether the statute creates an affirmative duty on behalf of the police to assist a defendant in obtaining such a test.

 Further, although not necessary for our analysis, the officer not only gave defendant an opportunity for a second chemical test at Lakeland Hospital, he offered to transport defendant to the hospital. Defendant chose not to avail himself of the opportunity for transportation to Lakeland Hospital for a second chemical test independent of the police-administered test.