*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOSE ARNOLDO MONTIEL,

Defendant-Appellant.

UNPUBLISHED
October 20, 2025
11:13 AM

No. 367471
Van Buren Circuit Court
LC No. 2021-023378-FC

Before: RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

In connection with the robbery of a convenience store and gas station in Lawrence, Michigan, a jury convicted defendant, Jose Arnoldo Montiel, of armed robbery, MCL 750.529; possession of a firearm by a felon (felon-in-possession), MCL 750.224f; fourth-degree fleeing and eluding a police officer, MCL 257.602a(2); and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant appeals his convictions by right, alleging several due-process violations and a *Brady*[1] violation. Additionally, defendant asserts that the evidence presented at trial was insufficient to support the verdict and that the verdict was against the great weight of the evidence. Finding no error requiring reversal, we affirm defendant's convictions.

## I. RELEVANT FACTS

According to witnesses at defendant's second trial,[2] on November 19, 2020, shortly before 8:00 p.m., Michigan State Police Trooper Mark Poyhonen responded to a complaint about an unfamiliar white Nissan Sentra parked in the driveway of a residence approximately half a block east of a gas station. Using his flashlight to look through the vehicle's windows, Trooper Poyhonen saw, among other things, a pair of black, Nike Airforce 1 shoes and a black, flat-brimmed hat. The

---

[1] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

[2] This case was originally tried in 2022 but resulted in a mistrial after the jury could not reach a unanimous verdict.

-1-

trooper returned to his patrol car and, having "a weird feeling about the vehicle," took a position from which he could observe the car. Trooper Poyhonen also ran the car's license plate and learned that it was a rental car.

Between 8:00 p.m. and 8:30 p.m. on the same evening, Kristina Tunstill was working at the convenience store at the nearby gas station when someone entered the store, cocked and pointed a pistol at her, and demanded money. The robber ordered her at gunpoint to place the money from the primary cash register into a black plastic grocery bag. Tunstill described the robber as a man with a Hispanic accent, who wore a black mask with a colored design on it. After the robber left, Tunstill called the police and the store's manager, Maria Martinez.

At approximately 8:20 p.m., Trooper Poyhonen saw a person dressed in black get into the driver's side of the Nissan Sentra. The driver drove away without turning on the car's headlights, despite that it was dark outside. Trooper Poyhonen attempted to make a traffic stop on that basis, but the driver of the Nissen Sentra took off west, away from the gas station, at a high rate of speed. Because it was contrary to policy to engage in a high-speed chase for a traffic violation, Trooper Poyhonen stopped his pursuit but relayed the car's location to dispatch until the car was out of his sight. Shortly after this incident, dispatch broadcast a notification about the armed robbery at the gas station.

Police were already at the gas station when the store's manager, Martinez, arrived and helped police obtain surveillance video of the robbery. Police also learned that the Nissan had been rented to Victoria Morales and went to her address. The first officer to arrive noted that the car was not there but saw a dark vehicle drop off a man, who walked toward Morales's house. When other officers arrived, they apprehended defendant, who was wearing a black, flat-brimmed hat and black, Nike Air Force 1 shoes, like those Trooper Poyhonen observed in the Nissan Sentra. He was also wearing black jeans and a hooded sweatshirt. The jeans were consistent with those worn by the robber in the surveillance video, but the hooded sweatshirt was not. During a search of Morales's house, police found money in the upstairs master bedroom and in the basement. The money in the basement was in a paper shopping bag, wadded up and concealed beneath some clothes.

Two days after the robbery, a hunter came across a white Nissan Sentra abandoned in an apple orchard. Police processed the car for evidence and recovered a black face mask/neck sleeve with a monkey or chimpanzee design on it. Using the surveillance video from the robbery, Trooper Poyhonen identified the mask recovered from the car as matching the robber's mask seen in video footage from the gas station. Trooper Poyhonen then submitted the mask for DNA analysis. The mask contained DNA from two individuals: defendant and an unknown, unrelated donor. Trooper Poyhonen testified that he did not test any other DNA samples because police did not have any other possible suspects.

Defendant was convicted as indicated and sentenced by the trial court as a fourth-offense habitual offender, MCL 769.12, to serve concurrent prison terms of 25 to 50 years for armed robbery, 6 to 25 years for felon-in-possession, and 2 to 15 years for fleeing and eluding, as well as to a consecutive prison sentence of 2 years for felony-firearm. Defendant now appeals.

## II. DISCUSSION

### A. UNIDENTIFIED DNA

Defendant first contends that his due-process right to a fair trial was violated when the police acted in bad faith by failing to obtain a reference sample from the unknown donor of DNA to the mask used during the robbery. We disagree.

Defendant failed to preserve this issue with a timely objection in the trial court. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266, 272 (2012). We review unpreserved claims of constitutional error for plain error affecting defendant's substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). To prevail under plain-error review, defendant must show that an obvious error occurred that "affected the outcome of the lower court proceeding." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[R]eversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings regardless of the guilt or innocence of the accused." *King*, 297 Mich App at 473.

Defendant appears to rely on *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), for the proposition that the police and prosecutor have an obligation to develop potentially exculpatory evidence. *Brady* does not provide support for this position. The United States Supreme Court in *Brady*, 373 US at 87, held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady* and its progeny impose an obligation on the government to disclose evidence in its possession. However, "[f]or due-process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Neither the prosecutor nor the police have a constitutional duty to help defendants build their cases by developing potentially exculpatory evidence. *Id.*; *People v Dickinson*, 321 Mich App 1, 16; 909 NW2d 24 (2017).

The gravamen of defendant's argument is that the police's failure to locate the unknown donor of DNA to the mask seized from the car used in the robbery denied his due-process right to a fair trial. It did not. Prosecutors' affirmative duty to disclose evidence favorable to defendants arose from "early 20th-century strictures against misrepresentation." *Kyles v Whitley*, 514 US 419, 432; 115 S Ct 1555; 131 L Ed 2d 490 (1995). There was no misrepresentation about the DNA evidence in the present case. The jury heard testimony that, in addition to defendant's DNA on the mask, there was also present the DNA of a second, unidentified donor. In addition, the DNA analyst testified that she did not know which donor contributed the most DNA, or when or how the DNA was contributed. The jury also heard Trooper Poyhonen testify that he did not obtain any additional DNA reference samples to send to the laboratory for analysis. The defense was free to attack the adequacy of the police investigation in an effort to argue that deficiencies in the investigation undermined the weight and strength of the prosecution's case. However, defendant had no due-process right to have the police search for or develop any evidence. See *Anstey*, 476 Mich at 461.

B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues that defense counsel rendered constitutionally ineffective assistance by not challenging the government's action related to the unidentified DNA.  We disagree.

Because defendant did not preserve this issue by moving for a new trial or an evidentiary hearing, see *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000), our review is limited to mistakes apparent on the record, see *Heft*, 299 Mich App at 80.

To be entitled to a new trial on the basis of ineffective assistance of counsel, the defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.  *Smith v Spisak*, 558 US 139, 149; 130 S Ct 676; 175 L Ed 2d 595 (2010); *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).  A claim of ineffective assistance cannot be premised upon counsel's failure to take a meritless position.  *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant contends that his counsel rendered deficient performance by failing to object to the government's actions, presumably the prosecution's failure to locate the unknown DNA donor. As already discussed, however, the prosecution was not constitutionally required to help defendant build his case by identifying the unknown donor, particularly when they had no other suspects. See *Anstey*, 476 Mich at 461; *Dickinson*, 321 Mich App at 16.  Given the legal landscape, any objection that defense counsel would have raised on the basis that police failed to look for the unknown DNA donor would have been futile.  Ineffective assistance cannot rest on counsel's failure to take a futile position.  See *Ericksen*, 288 Mich App at 201.  Accordingly, defendant has not established the first prong of the test for ineffective assistance, i.e., that counsel rendered objectively deficient performance, *Trakhtenberg*, 493 Mich at 51, and is therefore not entitled to relief.

C.  POLICE TESTIMONY

Defendant next argues that his due-process right to a fair trial was violated when Trooper Poyhonen testified that, from the beginning of his investigation, he believed that defendant perpetrated the robbery.  We find no error.

Because this issue comes to us without having been preserved, see *Heft*, 299 Mich App at 78, our review is for plain error that affected defendant's substantial rights, *Carines*, 460 Mich at 763.  "A witness may not opine about the defendant's guilt or innocence in a criminal case," *Heft*, 299 Mich App at 81, because a defendant's guilt or innocence is a question for the jury to resolve, *People v Likine*, 492 Mich 367, 407; 823 NW2d 50 (2012).  However, MRE 701 allows any witness, including police officers, to testify "in the form of opinions" that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'

testimony or the determination of a fact in issue."[3]  Accordingly, MRE 701 allows police officers to explain "the steps of their investigations from their personal perceptions."  *Heft*, 299 Mich App at 83, 83 n 41, citing MRE 701.

In the present case, the prosecution recalled Trooper Poyhonen to the stand to answer questions related to defense counsel's allegations during her opening statement that the police investigation was "sloppy" and that police "rush[ed] to judgment" against defendant.  During recross-examination, defense counsel established that Trooper Poyhonen was responsible for deciding whether to send DNA reference samples to the crime lab.  Defense counsel then asked why the trooper did not submit to the crime lab any DNA reference samples other than defendant's sample.  Trooper Poyhonen replied that no additional reference samples were submitted because investigators "did not have any other possible suspects."  The following exchange then occurred between defense counsel and Trooper Poyhonen:

> [*Defense Counsel*]:  Okay.  You never had any other people that you thought might've committed the armed robbery.  Did you?
>
> [*Trooper Poyhonen*]:  No, ma'am.
>
> *Q*.  You believed it was [defendant] from the beginning?  Didn't you?
>
> *A*.  Based upon our evidence, correct.

Trooper Poyhonen's testimony falls comfortably within testimony allowed by MRE 701. The trooper did not testify about defendant's guilt in general.  Rather, his testimony explained the basis for his investigatory decisions.  The defense theory was that the police investigation was sloppy, and the inadequacy of the investigation was implied from Trooper Poyhonen's decision not to send additional DNA references samples to the crime lab.  Trooper Poyhonen countered this implication by indicating how his perception of the facts of the investigation led to his decision. Trooper Poyhonen's testimony on recross, solicited by defense counsel, was permissible under these circumstances.  See MRE 701; *Heft*, 299 Mich App at 83.  Consequently, defendant has failed to show plain error arising from the challenged testimony.

## D.  VIDEO OF ROBBERY

Defendant next argues that the prosecution committed a *Brady* violation by failing to disclose a video recording of the robbery that also contained audio and by failing to disclose video from the cameras outside the convenience store that captured events before the robbery.  We find no *Brady* violation.

---

[3] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024.  See ADM File No. 2021-10, 512 Mich lxiii (2023).  We rely on the version of the rules in effect at the time of trial.

As previously noted, *Brady* requires the government to disclose evidence in its possession that is favorable to the defendant. We review de novo a trial court's decision on a *Brady* claim. See *People v Smith*, 498 Mich 466, 475; 870 NW2d 299 (2015). In order to establish a *Brady* violation, defendant must prove that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). "The government is held responsible for evidence within its control, even evidence unknown to the prosecution." *Id*. "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. "To establish materiality, a defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Id*., quoting *United States v Bagley*, 473 US 667, 682; 105 S Ct 3375; 87 L Ed 2d 481 (1985).

Defendant has not established that the prosecution suppressed audiovisual footage of the robbery taken by cameras located inside the gas station. The potential existence of such footage arose the day before defendant's first trial. At a hearing on defense counsel's motion to withdraw, it was revealed that both defense counsel and the prosecutor had just learned from gas station employees that there might be an audiovisual recording of the robbery. The prosecutor dispatched Trooper Poyhonen to the gas station to contact Martinez and obtain any such recording that might exist. On the second day of defendant's first trial, Martinez testified outside the jury's presence that she had been unable to locate an audiovisual recording of the robbery. Martinez further testified that she watched an audiovisual recording of the robbery on the day of the robbery, and she recognized the robber's voice as that of a regular customer. It was not until she learned that defendant had been arrested for the robbery that she connected the voice to defendant. She recognized his voice because he spoke with a distinctive accent.

In light of the foregoing, defendant has not shown that the prosecution or the police ever actually possessed video footage of the robbery that also contained audio, let alone suppressed such evidence. See *Chenault*, 495 Mich at 150. Further, defendant also has not established that had such evidence existed, it would have been favorable to him. See *id*. Although defendant claimed before his first trial that expert analysis of the audio would exonerate him, considering Martinez's testimony that she recognized the robber's voice as that of defendant because of his particular accent, it seems just as likely that any audio of the robbery could have been unfavorable to defendant. And given that any audio that existed may or may not have been favorable to defendant, defendant certainly has not shown "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. Because defendant has not proved that the prosecution possessed, let alone suppressed, an audiovisual recording of the robbery, defendant's *Brady* claim predicated on evidence from inside the gas station must fail. See *id*.

Likewise, defendant's *Brady* claim predicated on the alleged suppression of video footage of the outside of the store before the robbery fails for the same reason. There is no evidence that the police collected such footage and, therefore, no evidence of any footage for the prosecution to suppress. In fact, Trooper Benoit's testimony indicated that he decided after talking with Tunstill that any video showing the exterior of the building before the robbery would be irrelevant, unless the video showed defendant entering or exiting the building. The prosecution could not suppress footage that was not collected as evidence. Therefore, defendant's *Brady* claim predicated on the

alleged suppression of evidence collected from surveillance cameras outside the gas station also fails. See *id.*

## E. SUFFICIENCY OF THE EVIDENCE

Defendant next claims that the evidence presented at trial was insufficient to support the jury's verdicts. Once again, we disagree.

Due process requires that a prosecutor introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime. *Carines*, 460 Mich at 757; *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). When reviewing a challenge to the sufficiency of the evidence, we review the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011); *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). Our standard of review is deferential, which means that we "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted).

The jury convicted defendant of armed robbery, felon-in-possession of a firearm, fleeing and eluding a police officer, and felony-firearm. Defendant does not challenge the elements of these crimes, only the sufficiency of the evidence to support his identity as the armed robber. Identity is an essential element in a criminal prosecution, *People v Fairey*, 325 Mich App 645, 649; 928 NW2d 705 (2018), and the prosecution must prove the identity of the defendant as the perpetrator of charged offenses beyond a reasonable doubt, *People v Posey*, 512 Mich 317, 323; 1 NW3d 101 (2023) (opinion by BOLDEN, J.).[4]

Viewed in a light most favorable to the prosecution, the evidence was sufficient to establish defendant's identity as the armed robber. The jury was able to compare the height and build of the armed robber on the video with defendant's height and build. Martinez and Tunstill testified that they recognized defendant as a regular customer at the gas station, from which the jury could reasonably infer defendant's familiarity with the store, including which cash register was the primary register and might contain the most money. The jury could also reasonably infer from circumstantial evidence that the Nissan Sentra was connected to the robbery. Evidence connecting the Nissan Sentra to the robbery included when and where the car was parked relative to the gas station and the robbery; that the description of the driver who returned to the car shortly after the robbery matched the description of the armed robber; that the driver pulled onto the roadway without turning on the Nissan's headlights, even though it was dark; and that the driver ultimately sped away westward at a high rate of speed to avoid Trooper Poyhonen's attempted traffic stop.

---

[4] See *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 4 (stating that although the lead opinion in *Posey* was not technically binding, this Court will follow it in the interests of judicial economy).

In addition, the jury could reasonably infer from circumstantial evidence that defendant was connected to both the Nissan Sentra and to the robbery. Evidence connecting defendant to the Nissan included information showing that the car was rented to Morales, at whose house defendant was dropped off approximately two hours after the robbery. In addition, two days after the robbery, the Nissan was found abandoned in an orchard located on the way from the gas station to Morales's house. Inside the car was a mask that matched the one worn by the armed robber, and DNA testing concluded unequivocally that defendant had worn the mask. Further, the hat and shoes that Trooper Poyhonen had earlier observed inside the Nissan were no longer there; instead, troopers found defendant at Morales's house, wearing the same hat and shoes.

Lastly, the jury could reasonably infer defendant's connection to the robbery from testimony about events at Morales's house. When police arrived at Morales's house, she was generally uncooperative. She acknowledged that she had rented the Nissan Sentra, and she said that the car should be in the driveway. When it was not there, she surmised that it had been stolen, but she seemed atypically uninterested in talking further with police about the alleged theft of the car. In addition, Morales initially concealed the presence of defendant in the house. And when defendant eventually showed himself, he was belligerent and uncooperative. Lack of cooperation with law enforcement may indicate consciousness of guilt. *People v Solmonson*, 261 Mich App 657, 666-667; 683 NW2d 761 (2004). A search of the house revealed cash, some of which was concealed in a paper bag.

Defendant argues that there was no direct evidence connecting him to the robbery: the video did not show anything definitive; the gun, gloves, and dark hoodie that the robber wore were not found; Tunstill never identified defendant as the robber; and police did not identify the money seized from Morales's house with the money taken during the robbery. Although it is true that no direct evidence conclusively established defendant as the robber, circumstantial evidence and the reasonable inferences that arise from the evidence can constitute satisfactory proof of the elements of the crime, including identity. See *Posey*, 512 Mich at 342; see also *Carines*, 460 Mich at 757; *Dunigan*, 299 Mich App at 582. From the circumstantial evidence in this case, a rational jury could conclude beyond a reasonable doubt that defendant was guilty of the charged crimes.

Defendant further argues that the police did not conduct an adequate investigation: police did not attempt to collect any DNA from the Nissan, they did not obtain enough video footage from the gas station to provide a full picture of the robbery, and they did not locate the mask's second DNA donor. Defendant contends that investigatory choices showed him in a bad light, and he implies that a more thorough investigation would have revealed other explanations for the evidence. The gravamen of defendant's argument is that police did not develop potentially exculpatory evidence. However, as indicated earlier, police are not constitutionally obligated to help defendants build their cases by developing potentially exculpatory evidence. *Anstey*, 476 Mich at 461. Further, the prosecutor does not have to negate every reasonable theory consistent with innocence—the prosecutor is only bound to prove the elements of the offense beyond a reasonable doubt, and in the face of whatever contradictory evidence the defendant may provide. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). The prosecutor presented evidence in the present case sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. See *Wolfe*, 440 Mich at 513-514.

Viewing the evidence in the light most favorable to the prosecution, and drawing all reasonable inferences and making credibility choices in support of the jury verdict, we conclude that the prosecution presented sufficient evidence to establish that defendant was the perpetrator of the crimes for which the jury convicted him.

### F. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's verdicts are against the great weight of the evidence. Because defendant did not preserve his claim by raising the same issue in a timely motion for a new trial, see *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003), our review is for plain error affecting defendant's substantial rights, see *Carines*, 460 Mich at 764. We find no plain error.

Determining whether a verdict is against the great weight of the evidence requires review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds in *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998). Absent exceptional circumstances, we will not substitute our view of the credibility of witnesses for that of the jury. *Lemmon*, 456 Mich at 642.

Defendant's great-weight argument is the same as his insufficient-evidence argument. Specifically, he contends that, because no direct evidence connected him to the robbery and because an inadequate investigation left room for alternate explanations, the evidence was against the great weight of the evidence. As already indicated, however, circumstantial evidence and reasonable inferences drawn from it can constitute satisfactory proof of the elements of a crime, including identity, *Posey*, 512 Mich at 342, and neither the police nor the prosecutor had a duty to develop defendant's case for him, see *Anstey*, 476 Mich at 461. The evidence reasonably supports the jury's verdicts, and there is no indication that the jury's verdicts were the likely results of "causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). Accordingly, we conclude that defendant has not met his burden to establish that the jury's verdicts were against the great weight of the evidence.

### III. CONCLUSION

For the foregoing reasons, we conclude that defendant has not established that he is entitled to relief on the basis of alleged due-process or *Brady* violations, that sufficient evidence was presented to justify a rational trier of fact in finding defendant guilty beyond a reasonable doubt of the charged crimes, and that the jury's verdicts were not against the great weight of the evidence.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin