*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARK STEPHEN RIDENOUR,

        Defendant-Appellant.

UNPUBLISHED
October 22, 2019

No. 342748
Macomb Circuit Court
LC No. 2016-003962-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RYAN DAVID WHITLOW,

        Defendant-Appellant.

No. 342778
Macomb Circuit Court
LC No. 2016-003960-FH

---

Before: METER, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendants Mark Stephen Ridenour and Ryan David Whitlow were both convicted, by a single jury, of third-degree criminal sexual conduct. On appeal, defendant Ridenour raises claims of prosecutorial error, inadequate investigation by police, ineffective assistance of counsel, and guidelines scoring. Defendant Whitlow raises claims of inadequate investigation by police, evidentiary error, prosecutorial error, and failure to correct the presentence-investigation report. This Court consolidated their respective appeals of right. *People v Ridenour*, unpublished order of the Court of Appeals, entered November 26, 2018 (Docket No. 342748); *People v Whitlow*, unpublished order of the Court of Appeals, entered November 26, 2018 (Docket No. 342778). We affirm defendants' convictions and sentences, but remand for the

limited purpose of having the trial court transmit a corrected copy of defendant Whitlow's presentence-investigation report to the Department of Corrections.

## I. BACKGROUND

Defendants were convicted of sexually assaulting a female victim in the office of a bar in Eastpointe. Defendant Ridenour owned the bar and defendant Whitlow worked there as a manager and bartender. According to the victim, she visited the bar on the night of July 24, 2015. She admitted consuming several alcoholic beverages and consuming prescription medication, including both methadone and Valium, both depressants. She testified that she went to the bar's office to complete a job application, but she made mistakes on two application forms and threw them both in the trash can before she completed a third application form. The victim testified that, although her fiancé accompanied her to the office while she was completing the job applications, defendant Ridenour asked her fiancé to leave the office so that he could discuss work schedules with the victim, and her fiancé left the office.

The victim claimed that, after she completed the third form and her fiancé left the office, defendant Ridenour pushed her onto the office couch and an unidentified man (referred to at trial as "the biker") restrained her arms. The victim claimed that she struggled while defendant Ridenour sexually assaulted her. Defendant Ridenour then instructed defendant Whitlow to "finish," and defendant Whitlow sexually assaulted her. The three men then allowed the victim to leave the office.

The victim testified that these events occurred on the night of July 24-25, 2015. The victim reported the incident to the Eastpointe Police Department early on the morning of July 25, 2015. The police referred her for an examination by a sexual-assault-nurse examiner. DNA collected from the victim matched the victim's fiancé, but did not match either defendant. The victim made several statements to police and to the sexual-assault-nurse examiner that were inconsistent with her later trial testimony.

The police arranged for the victim to make recorded and monitored "pretext" calls to both defendants. Neither defendant made any inculpatory statements to the victim; defendant Ridenour did not admit culpability during the call, and defendant Whitlow did not answer the call. Although the police recorded those calls, the recording only captured one side of the conversation. The police did not attempt to collect any evidence from the scene of the assault—the bar. This included a failure to investigate the video-surveillance footage of the bar's security system, as well as a failure to search the office of the bar and the contents of its trash can, where the victim claimed that her two job applications and the condoms used by the defendants were discarded.

Defendant Ridenour testified that the victim visited the bar on July 23, not July 24. He testified that the victim completed a job application to work at his bar, but that the application was dated July 23. Defendants' theory at trial was that the victim fabricated the sexual-assault accusations while she was under the influence of alcohol and prescription drugs. Defendants also attacked the adequacy of the police investigation, particularly the failure to investigate the bar. Defendants argued that if police had visited the bar immediately after the victim made her report, they would not have found any condoms or erroneous job applications that she claimed

were thrown in the trash can. Defendants also argued that videos from the bar's surveillance cameras would have shown that the victim was not in the bar or the office on the night of July 24-25.

During opening statements, defendant Ridenour's counsel indicated that the victim's "story was rubber stamped at the police department, [and] sent to the prosecutor." During the rebuttal component of closing arguments, the prosecutor responded by stating:

> I think I told you I have been a prosecutor for almost ten years. I resent what Ms. Miller said about our office rubber stamping things. I, when I pick up a file, I read it from cover to cover. And I talk to victims. I listen to their whole story. When I look at evidence I don't hide what is good or bad for either side.

Defendant Whitlow also introduced the testimony of his wife and ex-wife that they watched defendant Whitlow constantly on the night of July 24-25, and that he did not commit the alleged assault. The prosecutor responded to this testimony by arguing to the jury that these witnesses were "two women that care about what happens to Ryan Whitlow, and that is why they testified." The prosecutor continued:

> But what they testified to [is] garbage. Toss it out the window. It is not useful. It is not useful testimony. It is not good evidence. It is just them trying to save him in the final hour.

During closing argument, the prosecutor argued that the victim had been honest, stating:

> She has been honest to a fault. The basis of her story that these two men forcibly shoved their penises into her vagina has never changed since July 25th when she made that police report. She has been honest. I was drinking. She has been honest. I had prescription drugs in my system. She has been honest. Yes, I might have messed up and said they put their penises into my mouth when really all I recall is as I sit on this stand is that they shoved their penises into my vagina. She has been honest. She has been credible.

During his closing argument, defendant Ridenour's counsel argued that the victim wanted to see herself as a victim so that she could deny her continuing addictions. Counsel argued that the police, the prosecutor, and the sexual-assault-nurse examiner all simply presumed that the victim was telling the truth. Counsel surmised that the victim was sober when she filled out the employment application on July 23, but over the next day some "crisis" affected her perception and memory. Defendant Ridenour's counsel stated, "The crisis came from her own hand, her own mouth and from her own mouth to her own brain and confusing the last man she has sex with, her fiancé, with the last man she had contact with before headed down this trip; this methadone Valium alcohol trip." Counsel also argued that the victim had tailored her fabrication to account for the absence of defendants' DNA by alleging that they used condoms.

In rebuttal, the prosecutor argued that the defense attorneys were making inconsistent arguments by stating that the victim's intoxication made her unbelievable, but also stating that

she had the presence of mind to fabricate explanations for the absence of physical evidence. The prosecutor stated:

> Now [the victim] was so drunk, so intoxicated that we can't believe her story, the defense says.
>
> Then in the next breath [defendant Ridenour] tells you she has concocted this fun rape story. That is what rape is, fun, being a victim is fun.
>
> * * *
>
> Now, continuing through [defendant Ridenour's] closing was we shouldn't assume she's a victim. That victimization is fun. That she is making up this d[e]lusional rape story as part of a dream or confusing it with sex that she had with fiancé Paul.

The prosecutor further stated that the victim was not having fun when she recounted allegations for the police or when she underwent the examination conducted by the sexual-assault-nurse examiner.

The jury convicted both defendants of third-degree criminal sexual conduct (CSC), MCL 750.520d(1)(b). The trial court sentenced defendant Ridenour to a prison term of 21 to 180 months, and sentenced defendant Whitlow to a prison term of 18 to 180 months. Defendant Ridenour appeals as of right in Docket No. 342748, and defendant Whitlow appeals as of right in Docket No. 342778.

## II. ANALYSIS

### A. DOCKET NO. 342748 (DEFENDANT RIDENOUR)

#### 1. PROSECUTORIAL ERROR

Defendant Ridenour argues that he was denied a fair trial because of improper arguments made by the prosecutor during closing and rebuttal arguments. Initially, we note that under this Court's jurisprudence, this is not a claim of "prosecutorial misconduct" (i.e., extreme or illegal conduct), but rather one of "prosecutorial error." See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015). The test for prosecutorial error is whether the prosecutor committed error during the course of the trial that "deprived defendant of a fair and impartial trial." *Id*. at 88. We consider issues of prosecutorial error "on a case-by-case basis by examining the record and evaluating the remarks in context, and in light of defendant's arguments." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). Because defendant Ridenour did not contemporaneously object to the prosecutor's remarks and request a curative instruction at trial, these claims are unpreserved. See *People v Solloway*, 316 Mich App 174, 201; 891 NW2d 255 (2016). We review unpreserved claims of prosecutorial error for plain error affecting the defendant's substantial rights. *Id*. at 202.

Defendant Ridenour first argues that the prosecutor misled the jury about his defense theory by stating that defendants wanted the jury to believe that the victim fabricated the sexual-

-4-

assault accusations for her own amusement. He states that his actual theory at trial was that the victim's accusations were not credible because the victim was under the combined influence of alcohol and other drugs when the alleged assault occurred, not that she made the accusations "for fun."

"[T]he prosecutor may fairly respond to defense arguments." *People v Dunigan*, 299 Mich App 579, 588; 831 NW2d 243 (2013). In this case, the prosecutor fairly responded to defense counsel's theory by arguing that the victim's pursuit of her complaint was not fun, but painful. The jury was able to hear both arguments and decide for itself whether the prosecutor's rebuttal argument fairly and accurately addressed defendant Ridenour's argument. To the extent that the prosecutor mischaracterized defendant Ridenour's argument, the trial court protected defendant Ridenour's substantial rights by instructing the jury that the attorneys' arguments are not evidence, and that its verdict must be based on the evidence. "Jurors are presumed to follow the court's instructions, and instructions are presumed to cure most errors." *People v Abraham,* 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, defendant Ridenour fails to establish plain error affecting his substantial rights.

Defendant Ridenour next argues that the prosecutor improperly shifted the burden of proof by arguing that the jury should convict him because he failed to prove that fabricating a rape was fun, and failed to prove any other reason why the victim would make a false report. Defendant Ridenour does not provide a citation to the record in support of this argument. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

In any event, our review of the record fails to show any support for defendant Ridenour's argument. "A prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Yet, "attacking the credibility of a theory advanced by a defendant does not shift the burden of proof." *People v McGhee*, 268 Mich App 600, 635; 709 NW2d 595 (2005). The record discloses that the prosecutor argued that the victim had no motive to fabricate a sexual assault accusation, but it does not reveal any statement by the prosecutor about defendants' failure to prove that fabricating a sexual assault is fun. Viewed in context, the prosecutor's argument regarding motive was not an argument that defendants were required to provide a reason why the victim would make a false report, but an argument highlighting that the victim had nothing to gain from fabricating sexual-assault allegations, and thus there was no reason to doubt her credibility. There was no plain error.

Defendant Ridenour next argues that the prosecutor improperly vouched for the victim's credibility. "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). "But a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). A prosecutor may also argue from the

evidence and reasonable inferences arising from the evidence that a witness is worthy or unworthy of belief. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007).

Defendant Ridenour argues that the prosecutor vouched for the victim's credibility by arguing that she told the whole truth, including the truth about actions that reflected poorly on her. Although defendant Ridenour contends that the prosecutor improperly stated that she would not prosecute a case if she did not believe the complaining witness, he again fails to provide a citation to the record in support of this claim. The record indicates that the prosecutor argued that the victim was credible because she admitted to the sexual-assault-nurse examiner that she was drinking and that she had used Valium and methadone. The prosecutor stated, "It doesn't make her look great that she had multiple white Russians and a couple shots and that she is on methadone and on Valium." These remarks did not amount to improper vouching. They were part of an argument that the victim's willingness to make unfavorable admissions enhanced her credibility.

Furthermore, the prosecutor did not imply that she only prosecuted cases where she believed the complainant. She stated that she considered all evidence, favorable and unfavorable. The statement was responsive to the remark made by defendant Ridenour's counsel during opening statement that the victim's "story was rubber stamped at the police department, [and] sent to the prosecutor." Viewed in context, the statement was not clearly improper.

Although defendant Ridenour argues that the prosecutor's arguments are comparable to arguments that this Court found improper in other cases, the prosecutor's arguments were not remotely similar in kind or degree to the arguments found to be improper in the cases cited by defendant Ridenour. The prosecutor's remarks were not inflammatory, they did not appeal to the jurors' emotions, and the prosecutor did not urge the jury to convict on the basis of outrage, in disregard of the evidence. Therefore, we reject this claim of error.

## 2. POLICE INVESTIGATION

Defendant Ridenour next argues that the police department's allegedly inadequate investigation violated his right to due process. Although defendant Ridenour argued before the jury that the inadequate investigation established reasonable doubt to preclude a conviction, he did not argue that the investigation violated his due-process rights. Accordingly, this issue is not preserved for appellate review. An unpreserved constitutional claim is subject to review for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain error rule, a defendant must show (1) that an error occurred; (2) that the error was plain error; and (3) that the error affected his substantial rights. *Id.* at 763.

"[D]ue process requires the prosecution to disclose evidence in its possession that is exculpatory and material, regardless of whether the defendant requests the evidence." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Yet, "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v Youngblood*, 488 US 51, 57; 109 S Ct 333; 102 L Ed 2d 281 (1988). Further, "[f]or due process purposes, there is a crucial distinction between failing to

disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006).

Defendant Ridenour argues that police officers would have found exculpatory evidence if they timely and properly investigated the victim's report. He asserts that security-camera footage might have supported his assertion that the victim visited the bar on July 23, 2015, not July 24, 2015, as she claimed. He also asserts that the police could have obtained a list of bar patrons and potential res-gestae witnesses who could have provided exculpatory information. He further asserts that a timely investigation would have revealed the absence of condoms and job applications in the trash, which would have undermined the victim's testimony. Additionally, he states that the police would have seen defendant Ridenour's office and would have known that a sexual assault could not have taken place there because of the clutter on the couch. These arguments are based on speculation that an investigation would have produced exculpatory rather than inculpatory evidence. See *People v Johnson*, 245 Mich App 243, 260; 631 NW2d 1 (2001) (holding that failure to appoint an investigator did not violate due process where the defendant's claim "that an investigator would have retraced the events during the relevant period and would have found witnesses to testify that defendant did not commit the acts that the prosecution alleged" was based on "pure conjecture"). Moreover, the claims do not involve a failure to disclose or preserve known evidence, but rather a failure to develop evidence. The "police have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Anstey*, 476 Mich at 461. Defendants were free to argue that the police officers' inadequate investigation established reasonable doubt. Indeed, they made that argument at trial. The alleged inadequacy of the police investigation, however, does not establish a due-process violation.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Ridenour next raises several claims of ineffective assistance of counsel. Where, as here, there was no evidentiary hearing on claims of ineffective assistance, this Court's review is limited to errors apparent on the record. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). "The determination whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *Id.* To establish ineffective assistance of counsel, defendant Ridenour must show that "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial could have been different." *Solloway*, 316 Mich App at 188. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Foster*, 319 Mich App 365, 391; 901 NW2d 127 (2017) (cleaned up). Effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Defendant Ridenour also "bears the burden of establishing the factual predicate for his claim." *Id.* (cleaned up).

Defendant Ridenour argues that trial counsel's inaction cost him the opportunity to introduce into evidence at trial several photographs of his office. The record discloses that the trial court did not exclude the photographs from evidence. Rather, it deferred ruling on the admissibility of the photographs after the prosecutor objected that they had not been timely

provided before trial. Defense counsel made no further attempt to introduce the photographs and the issue was not revisited. The only information in the record regarding the production of the photographs is that defendant Ridenour did not provide them to his defense counsel until the fourth day of trial. Therefore, the record does not support any argument that defendant Ridenour's trial counsel was responsible for the delayed introduction of the photographs.

Moreover, defendant Ridenour has not made the requisite showing of prejudice to establish a claim of ineffective assistance of counsel. The photographs are of dubious relevance. Defendant Ridenour argues that the photographs were relevant to show that a sexual assault could not have occurred the way the victim described because there was insufficient space amidst the clutter on the couch and in the bar's office. He also generally argues that allowing the jury to see the office would have assisted it in reaching a verdict. According to the record, however, the photographs were taken anywhere from five months to two years after the sexual assault. The trial court would have acted within its discretion by excluding the photographs on the ground that they were not relevant because they did not depict the condition of the office in July 2015. Furthermore, even if the trial court had admitted the photographs, their probative value would have been low given that they did not depict the office on the day of the assault, did not show the entire office, and did not clearly depict the couch described in the victim's testimony. Under these circumstances, defendant Ridenour has not demonstrated a reasonable probability that timely introduction of the photographs would have achieved a more favorable outcome.

Defendant Ridenour also argues that trial counsel misinformed him regarding his right to a polygraph examination. A defendant accused of committing a criminal-sexual-conduct offense "shall be given a polygraph examination or lie detector test if the defendant requests it." MCL 776.21(5). Yet, "[t]he bright-line rule that evidence relating to a polygraph examination is inadmissible is well established." *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003). Thus, even if defendant Ridenour had taken a polygraph test, the results of that test would not have been admissible. Defendant Ridenour nonetheless argues that the test would have been beneficial because he would have passed the polygraph, and a favorable result might have caused the prosecutor to withdraw the charges. Both of these assumptions are entirely speculative. They do not support this claim of ineffective assistance of counsel.

## 4. GUIDELINES SCORING

Finally, defendant Ridenour argues that the trial court erred in its scoring of the sentencing guidelines when it assessed 10 points for offense variable (OV) 14, on the basis that he was a leader in a multiple-offender situation. In reviewing a defendant's claim that the trial court assigned an improper score to an offense variable, this Court reviews for clear error the trial court's factual determinations, which must be supported by a preponderance of the evidence. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016). We review de novo the trial court's interpretation and application of the sentencing guidelines. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

OV 14, the offender's role, is governed by MCL 777.44, which requires a score of 10 points where the offender was a leader in a multiple-offender situation. MCL 777.44(1)(a). "The entire criminal transaction should be considered when scoring this variable." MCL

777.44(2)(a). "If 3 or more offenders were involved, more than 1 offender may be determined to have been a leader." MCL 777.44(2)(b). The Legislature did not define the term "leader," but in *People v Rhodes (On Remand)*, 305 Mich App 85, 90; 849 NW2d 417 (2014), this Court held:

> According to *Random House Webster's College Dictionary* (2001), a "leader" is defined in relevant part as "a person or thing that leads" or "a guiding or directing head, as of an army or political group." To "lead" is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting.

In the present case, defendant Ridenour was the person who brought the victim to his office and directed her fiancé to leave the room. He also was the person who initially pulled down the victim's pants and was the first individual to attempt sexual penetration. He then directed Whitlow to "finish" the assault. This evidence was sufficient to support the trial court's finding that defendant Ridenour acted as a leader. Accordingly, the trial court did not err by assessing 10 points for OV 14.

## B.  DOCKET NO. 342778 (DEFENDANT WHITLOW)

### 1.  POLICE INVESTIGATION

Defendant Whitlow repeats the substance of his codefendant's argument that the police officers' failure to investigate the case, including their failure to investigate the bar, deprived him of exculpatory evidence, thereby violating his right to due process. Our earlier discussion of this issue applies with equal force here. Defendant Whitlow cannot establish a due-process violation based on the police officers' failure to discover or develop potentially exculpatory evidence because the police "have no constitutional duty to assist a defendant in developing potentially exculpatory evidence." *Anstey*, 476 Mich at 461.

Defendant Whitlow further argues, however, that the prosecutor and police were obligated to obtain a list of persons present in the bar on the night of the alleged assault. In support of this argument, defendant Whitlow relies on MCL 767.40a(1), which requires the prosecuting attorney to "attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers." See also MCR 6.112(D). MCL 767.40a imposed on the prosecutor a duty to disclose *known* res gestae witnesses. Defendant Whitlow does not contend that the prosecutor had knowledge of res gestae witnesses who were not disclosed. The statute did not impose on the prosecutor an affirmative duty to assist in discovering additional witnesses whose identities were not known. See *People v Burwick*, 450 Mich 281, 288-289; 537 NW2d 813 (1995).

Defendant Whitlow also argues that he was prejudiced by the prosecutor's failure to obtain a complete recording of the victim's pretext calls. The testimony at trial indicated that a pretext call with defendant Whitlow never took place because he did not answer the victim's call. The victim's call to defendant Ridenour was recorded, but only one side of the conversation was preserved in the recording. When the government fails to preserve evidence whose exculpatory value is indeterminate or only potentially useful, the defendant has the burden of proving that the government acted in bad faith by failing to preserve the evidence. *Youngblood*, 488 US at 57-58;

*People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). The testimony at trial indicated that the police intended to record both sides of the conversation, but for unexplained reasons, the recording device only recorded one side of the conversation. The detective in charge of the investigation in this case explained that he heard the entire phone call, and did not anticipate that the victim's voice would not be recorded. The same recording device had been used previously to record other calls and this problem had not occurred. It was disclosed to the jury that defendant Ridenour did not make any exculpatory admissions during his portion of the conversation that was recorded. Defendant Whitlow does not explain how the victim's statements in her call with defendant Ridenour could have been exculpatory for defendant Whitlow beyond this disclosure. In any event, the testimony indicated that the failure to preserve the victim's side of the pretext call was due to a technical error, and not any bad faith by the police. Accordingly, defendant Whitlow has not established a due-process violation.

## 2. EXCLUSION OF PHOTOGRAPHIC EVIDENCE

Defendant Whitlow next argues that the trial court improperly "suppressed" the photographs of the bar's office that defendant Ridenour's counsel attempted to introduce at trial. As discussed earlier, the photographs were not timely offered because defendant Ridenour's counsel did not disclose them to the prosecutor until midtrial. Contrary to what defendant Whitlow asserts, the trial court did not exclude the photographs, but rather deferred ruling on their admissibility. Neither defendant revisited the issue later, so the trial court never decided their admissibility. Accordingly, defendant Whitlow cannot establish any error on the basis that the photos were erroneously excluded.

Defendant Whitlow alternatively argues that his defense counsel was ineffective for failing to disclose the photographs or by failing to renew the belated attempt to offer them at trial. Initially, it is not apparent from the record that defendant Whitlow's counsel was aware of the photographs before trial. As discussed earlier, information in the record indicates that defendant Ridenour did not provide them to his defense counsel until the fourth day of trial. There is no information in the record disclosing if and when defendant Whitlow's counsel became aware of or obtained the photographs. Accordingly, defendant Whitlow cannot establish that trial counsel erred by failing to introduce the photographs.

Furthermore, as explained earlier, the photographs are of doubtful evidentiary value because they were taken, at the earliest, several months after the alleged assault. Defendant Whitlow argues that the photographs could have shown jurors the layout inside the bar and details such as where surveillance cameras were located. Yet, the photographs in question are not photos of the interior of the bar, but of the bar's interior office. For these reasons, defendant Whitlow has also failed to establish a reasonable probability that timely introduction of the photographs would have achieved a more favorable outcome.

## 3. PROSECUTORIAL ERROR

Defendant Whitlow also raises several claims of prosecutorial misconduct, none of which were preserved with an appropriate objection at trial. Accordingly, we review these claims for plain error affecting defendant Whitlow's substantial rights. *Solloway*, 316 Mich App at 201-202.

Defendant Whitlow argues that the prosecutor improperly vouched for the victim's credibility by stating that she was "honest to a fault." The prosecutor's statements did not imply that the prosecutor had special knowledge concerning the victim's credibility. See *Bahoda*, 448 Mich at 276. The prosecutor argued from the evidence that the victim was worthy of belief because she admitted unfavorable information about herself and because she was willing to admit discrepancies between her trial testimony and her prior statements to the police and the sexual-assault-nurse examiner. The defendants' theory was that the victim's testimony was unworthy of belief. The prosecutor was entitled to advance counter-arguments, based on the evidence, that the victim's unfavorable admissions made her testimony more credible. *Dobek*, 274 Mich App at 66-67. Accordingly, the prosecutor's argument was not improper.

Defendant Whitlow also argues that the prosecutor improperly vouched for the police officers' credibility by stating that the police "followed protocol in every way possible." Defendant Whitlow argues that this statement was not supported by the evidence because there was no testimony that the police followed protocol "in every possible way." He characterizes the statement as improper vouching because it implied that the prosecutor had special knowledge concerning the police department's protocol. However, the detective-in-charge testified at trial regarding protocol for investigating a sexual-assault case. He testified that protocol requires referring the complainant for a sexual-assault examination, interviewing the victim, and interviewing the suspect if possible. He also stated that the police attempt to conduct a "one party consent call" in which the complainant attempts to make a recorded call to the suspect. The detective testified that these protocols were followed in this case. Although the defense challenged other aspects of the police investigation, the prosecutor's argument was supported by the detective's testimony that the officers did what their department requires for criminal-sexual-conduct investigations, even if they could have done more. Reasonable jurors would not interpret the prosecutor's statement as approval of the investigation based on knowledge unavailable to the jury. Moreover, it was unlikely that the jury would understand the colloquial statement "in every possible way" as a literal and absolute statement. Accordingly, the statement does not rise to the level of plain error. Moreover, the trial court's instruction to the jury that the attorneys' statements are not evidence was sufficient to protect defendant Whitlow's substantial rights.

Defendant Whitlow also argues that the prosecutor denigrated the defense by stating that defendant Whitlow's witnesses gave "garbage" testimony. The prosecutor made this statement in reference to the testimony of defendant Whitlow's wife and ex-wife that they watched defendant Whitlow constantly on the night of the alleged assault. The prosecutor stated that these witnesses were "two women that care about what happens to Ryan Whitlow, and that is why they testified." She then encouraged the jury to ignore their testimony because it was biased.

"A prosecutor is afforded great latitude regarding his or her arguments and conduct at trial." *Fyda*, 288 Mich App at 461. "But the prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *Id*. "This prohibition is based on the negative effect such an argument has on the presumption of innocence." *Id*. In this case, the prosecutor's statement, "what they testified to [is] garbage," clearly pertained to the testimony of defendant Whitlow's wife and ex-wife, not defense counsel or the entire defense. The statement focused on the witnesses' purported bias in favor of defendant Whitlow. The prosecutor was entitled to

argue that the witnesses' relationship to defendant Whitlow showed that they were biased, and therefore, their testimony was not worthy of belief. *Dobek*, 274 Mich App at 66-67. The statement in no way suggested that defense counsel was trying to mislead the jury. Accordingly, the statement was not improper.

## 4. PRESENTENCE-INVESTIGATION REPORT

At sentencing, defendant Whitlow's counsel argued that his presentence-investigation report (PSIR) contained the erroneous statement that the victim alleged that the sexual assault included both oral and vaginal penetration. The victim testified at trial that she did not recall oral penetration. The trial court agreed to correct the statement on the PSIR. "If the court finds on the record that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." *People v Lloyd*, 284 Mich App 703, 705; 774 NW2d 347 (2009) (cleaned up). Because the trial court agreed to correct Whitlow's PSIR to remove the allegation of oral penetration, defendant Whitlow was entitled to have a corrected copy of the PSIR sent to the Department of Corrections. The prosecutor agrees that defendant Whitlow is entitled to this relief. Accordingly, we remand for this limited purpose.

We affirm defendants' convictions and sentences, but remand for the limited purpose of having the trial court transmit a corrected copy of defendant Whitlow's PSIR to the Department of Corrections. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle

-12-