*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 15, 2021

Plaintiff-Appellee,

v

No. 352430
Kent Circuit Court
LC No. 18-009813-FC

JAMES EDWARD TIMS III,

Defendant-Appellant.

Before: SHAPIRO, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b; third-degree criminal sexual conduct (CSC-III), MCL 750.520d; and accosting a child for immoral purposes, MCL 750.145a. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent sentences of 25 to 50 years' imprisonment for defendant's conviction of CSC-I, 10 to 30 years' imprisonment for his conviction of CSC-III, and 2 to 8 years' imprisonment for his conviction of accosting a child for immoral purposes. We affirm.

## I. FACTUAL BACKGROUND

Defendant, the boyfriend of one of the victim's sisters, assaulted the victim twice, once when 12 years old and again when 13 years old, each time at Roosevelt Park in Grand Rapids. The first assault happened after defendant and the victim went walking on a trail while smoking marijuana. They approached the staircase leading to a gym in the park and because the stairs were wet defendant offered his lap to the victim to sit. The victim obliged and defendant began massaging her thighs and buttocks overtop her clothing. Defendant started kissing the victim's neck and tried touching her vagina underneath her clothing, but she declined and defendant stopped. Defendant then told the victim to get off his lap and he walked to the side of the building next to where they were sitting. Defendant pulled down his pants and told the victim to come near. The victim testified that she performed fellatio on him because she felt like she could not say no since his pants were already down.

Defendant told the victim that she hurt him because of her teeth and asked her to stop. He recommended that they try something different. The victim testified that defendant told her to "get in doggystyle," but she did not know what that meant. Defendant demonstrated what he meant by getting on his hands and knees. The victim complied because she felt like she could not say no. Defendant proceeded to put his penis inside the victim's vagina. Afterward, defendant made the victim stand up and show him her breasts. Defendant told the victim that she had to promise "to take this to the grave." She testified that he said that "he was going to kill me if I told or that he was going to hurt me."

The victim also testified regarding a second sexual assault by defendant when she was 13 years old. The victim and defendant texted and defendant sent her pictures of his penis. The victim talked with defendant about how she missed her older sister, so defendant offered to drive her to see her sister. She agreed and defendant drove them to the same location in Roosevelt Park where the first sexual assault happened. Because the victim and defendant had spoken about sex, she assumed that when defendant picked her up and brought her to Roosevelt Park that they would engage in sex and then go see her sister. When they arrived at the park, defendant and the victim went to the backseat of defendant's car where defendant took his penis out of his pants. Defendant pulled the victim's pants down, told her to get on top of him, and then vaginally penetrated the victim. After he finished, he threw the victim off of him. Two years later, the victim disclosed the abuse to her mother.

Thomas Cottrell, an expert qualified in child sexual abuse dynamics, testified that children do not typically disclose sexual abuse immediately; delayed disclosure occurs, whether it be weeks or decades. Cottrell stated that threats by the perpetrator may be a factor as to why a child does not disclose abuse. He testified that most sexual abuse cases involve someone that the child already knows who has a preexisting relationship with the family which can cause the abused child to become more reluctant to disclose out of fear that it will negatively impact the child's relationship with the family. Cottrell testified that an individual is more susceptible to sexual abuse if that individual had already been abused and that most children do not resist sexual assault because of the grooming that takes place.

The jury found defendant guilty. Defendant now appeals.

II. ANALYSIS

Defendant first argues that the trial court erred by admitting testimony from Cottrell that he claims vouched for the victim's credibility and that defense counsel provided ineffective assistance by failing to object to such testimony. We disagree.

We review unpreserved claims of evidentiary error for plain error affecting a defendant's substantial rights. *People v Coy*, 258 Mich App 1, 12; 699 NW2d 831 (2003). This standard of review requires defendant to establish the following:

> [f]irst, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously

affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id*. (citations omitted).]

Pursuant to MRE 702, expert testimony is admissible:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Although expert testimony is admissible, such testimony may not vouch for the veracity of the victim. *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995). More recently, our Supreme Court held that an expert witness may not testify "that children overwhelmingly do not lie when reporting sexual abuse because such testimony improperly vouches for the complainant's veracity." *People v Thorpe*, 504 Mich 230; 934 NW2d 693 (2019). "It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury." *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007).

Defendant contends that this case is akin to *Thorpe*, in which our Supreme Court concluded that expert opinion testimony that "only 2% to 4% of children lie about sexual abuse" was "for all intents and purposes vouch[ing] for [the complainant]'s credibility." *Thorpe*, 504 Mich at 259. In *Thorpe*, the same expert witness who testified in this case testified about the rate at which children that he encountered lied about sexual assault. *Id*. Cottrell also "identified only two specific scenarios in his experience when children might lie . . . ." *Id*. Our Supreme Court held such testimony inadmissible because it essentially vouched for the complaining witness's testimony, reasoning that, "although he did not actually say it, one might reasonably conclude on the basis of Cottrell's testimony that there was a 0% chance [the child] had lied about sexual abuse." *Id*.

The only similarity between *Thorpe* and this case, however, is the presence of Cottrell as the expert witness. Unlike in *Thorpe*, in this case Cottrell neither vouched for the victim's credibility nor provided expert opinion testimony about the victim. Our Supreme Court identified instances that an expert witness may testify regarding child sexual abuse:

(1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Peterson*, 450 Mich at 352-353.]

In this case, unlike in *Thorpe*, Cottrell did not identify specific scenarios that he encountered when children might lie, did not give any estimates or percentages about the rate at

which children lie when disclosing acts of sexual abuse, and never testified in a manner from which the jury could draw an inference that the victim told the truth. Cottrell simply provided relevant general information regarding child sexual abuse dynamics to inform the jury regarding, among other things, basic reasons for victim late disclosure. None of Cottrell's testimony that defendant challenges improperly vouched for the victim's credibility.

Further, in *Thorpe*, our Supreme Court explained that

> Thorpe's trial was a true credibility contest. There was no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements. The prosecution's case consisted of BG's allegations, testimony by her mother regarding BG's disclosure of the alleged abuse and behavior throughout the summer and fall of 2012, and Cottrell's expert testimony. Thorpe testified in his own defense and denied the allegations. Additionally, Kimberly testified about other reasons for BG's behavior during the summer and fall of 2012; namely, that her mother had started a new relationship and become pregnant and that Thorpe had decided to no longer have parenting time with BG. Because the trial turned on the jury's assessment of BG's credibility, the improperly admitted testimony wherein Cottrell vouched for BG's credibility likely affected the jury's ultimate decision. [*Thorpe*, 504 Mich at 260; see also *id*. at 264.]

Unlike *Thorpe*, this case did not feature a similar "true credibility contest." Although no physical evidence of sexual abuse or testimony from eyewitnesses to the alleged assaults were presented, the prosecution presented evidence of inculpatory statements made by defendant, such as text messages from defendant about performing oral sex on the victim, as well as a message indicating that he told the victim's older sister about the sexual acts that he performed with the victim. Further, the victim's older sister testified that defendant informed her about what happened. "It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact." *People v Palmer*, 392 Mich 370, 375; 220 NW2d 393 (1974) (citation omitted). "In determining the facts the jury may draw reasonable inferences from the facts established by either direct or circumstantial evidence." *Id*. at 376. "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). Defendant has not established plain error affecting his substantial rights. See *Coy*, 258 Mich App at 12. The trial court, therefore, did not err by admitting Cottrell's general testimony regarding the dynamics of child sexual abuse.

Consequently, defense counsel did not provide ineffective assistance of counsel. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (citation omitted). Because Cottrell provided admissible testimony and did not testify regarding the specifics of this case or vouch in any manner regarding the victim's credibility, no legitimate basis on which defense counsel could object existed and had defense counsel objected it would have been futile. See *id*. Therefore, defendant's contention that his counsel provided him ineffective assistance lacks merit.

Defendant also argues that the trial court erred by preventing defense counsel from questioning the victim about a previous consensual sexual encounter with another person to establish the victim's age-inappropriate sexual knowledge. We disagree.

This Court reviews preserved claims of evidentiary error for an abuse of discretion. *People v Bergman*, 312 Mich App 471, 482; 879 NW2d 278 (2015). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. at 483 (quotation marks and citation omitted). "If the court's evidentiary error is nonconstitutional and preserved, then it is presumed not to be a ground for reversal unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 565-566; 852 NW2d 587 (2014) (quotation marks and citation omitted). "This Court also reviews de novo the constitutional question whether a defendant was denied [his or] her constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

"A criminal defendant has a right to present a defense under our state and federal constitutions. [T]he right to present a defense is a fundamental element of due process . . . ." *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (quotation marks and citations omitted; alteration and ellipsis in original). At a minimum, "criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." *Id*. (quotation marks and citation omitted; ellipsis in original). "But this right is not absolute: the accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' " *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008) (quotation marks and citation omitted; ellipsis in original). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

Michigan's Legislature enacted MCL 750.520j(1), known as the rape-shield statute, to limit evidence of a victim's sexual conduct as follows:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

"The rape-shield statute bars, with two narrow exceptions, evidence of *all* sexual activity by the complainant not incident to the alleged rape." *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d

531 (2014) (quotation marks and citations omitted, emphasis in original). "Because the statute excludes evidence that in most cases would be only minimally relevant, the statute's prohibitions do not deny or significantly diminish a defendant's right of confrontation." *Id.* at 91-92. "Moreover, evidence of a complainant's sexual history also is usually irrelevant as impeachment evidence because it has no bearing on character for truthfulness." *Id.* at 92 (quotation marks and citations omitted).

Limited circumstances exist to admit evidence of a victim's past sexual act in order to preserve a defendant's Sixth Amendment right to confrontation. See *People v Benton*, 294 Mich App 191, 197; 817 NW2d 599 (2011) ("In certain limited situations, evidence that is not admissible under one of the statutory exceptions may nevertheless be relevant and admissible to preserve a criminal defendant's Sixth Amendment right of confrontation.").

> "The fact that the Legislature has determined that evidence of sexual conduct is not admissible as character evidence to prove consensual conduct or for general impeachment purposes is not however a declaration that evidence of sexual conduct is never admissible. We recognize that in certain limited situations, such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation. For example, where the defendant proffers evidence of a complainant's prior sexual conduct for the narrow purpose of showing the complaining witness' bias, this would almost always be material and should be admitted. Moreover, in certain circumstances, evidence of a complainant's sexual conduct may also be probative of a complainant's ulterior motive for making a false charge. Additionally, the defendant should be permitted to show that the complainant has made false accusations of rape in the past." [*Id.*, quoting *People v Hackett*, 421 Mich 338, 348-349; 365 NW2d 120 (1984) (citations omitted).]

Further, evidence of a victim's age-inappropriate sexual knowledge may be admitted under certain safeguards. See *People v Morse*, 231 Mich App 424, 436; 586 NW2d 555 (1998).

In this case, before trial defendant moved for permission to cross-examine the victim about her allegations of incidents of sexual abuse by another older sister's boyfriend that she disclosed during 2016 but the prosecution had declined to file charges. Defendant argued that he could use the previous disclosures to show the source of age-inappropriate sexual knowledge had been other than himself, to show that she made no allegation of sexual abuse against him at the time, and to show that her family dynamics would not have prevented her from disclosing alleged abuse by defendant against her. The trial court granted defendant's motion in part and allowed defendant to question the victim regarding other sexual abuse disclosures in 2016, but the trial court reserved until trial its decision on the scope of such cross-examination.

During trial, on direct examination, the prosecution elicited testimony from the victim regarding incidents of oral sex with her older sister's 16-year-old boyfriend. Defense counsel sought permission to cross-examine the victim regarding consensual sexual conduct with the boy on the ground that, without such testimony, the jury would think she learned everything else from defendant. The trial court limited the scope of defendant's cross-examination of the victim precluding defendant from eliciting testimony regarding specific sexual acts of the victim with

persons other than defendant, but permitting defendant to elicit testimony to establish her knowledge of sexual conduct to determine whether she had age-inappropriate knowledge.

The record reflects that defense counsel cross-examined the victim and elicited testimony that she participated in forensic interviews in 2016 regarding alleged sexual encounters with her older sister's 16-year-old boyfriend. She explained why she disclosed that alleged abuse and admitted that she did not disclose during those interviews any incidents involving defendant but waited for two years before doing so.

Defense counsel also questioned the victim regarding her sexual knowledge and elicited testimony from her that she knew about fellatio and slang terms for it before her encounters with defendant. The victim, however, denied that she knew what "doggystyle" meant and testified that she relied on defendant to instruct her about that sexual position. The record indicates that defense counsel's cross-examination probed the victim's source of sexual knowledge and enabled defendant to present evidence of an alternative source for her age-inappropriate knowledge. The trial court appropriately precluded eliciting testimony from the victim regarding other specific instances of sexual conduct with other persons as required under MCL 750.520j(1). We are not persuaded that the trial court abused its discretion in this regard. The trial court's rulings allowed defendant to confront his accuser and present his defense but appropriately limited defendant's cross-examination of the victim regarding additional specific acts of sexual conduct with other persons. Admission of such evidence would likely have created a danger of misleading the jury and invaded the victim's privacy. The trial court correctly balanced the rights of the victim and defendant and its evidentiary rulings were well within the range of principled outcomes.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Mark J. Cavanagh
/s/ James Robert Redford

-7-