*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MARTELL CARLTON DENNIS,

       Defendant-Appellant.

UNPUBLISHED
June 29, 2023

No. 360564
Oakland Circuit Court
LC No. 2019-271660-FC

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of kidnapping, MCL 750.349, four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (force or coercion used to accomplish sexual penetration), and assault with intent to commit great bodily harm less than murder (AWIGBH), MCL 750.84. Defendant was sentenced to 15 to 60 years' imprisonment for the kidnapping conviction, 15 to 60 years' imprisonment for each CSC-I conviction, and 4 years and 9 months to 10 years' imprisonment for the AWIGBH conviction. We affirm.

## I. BACKGROUND

The circumstances that led to the charges in this case began on the night of June 18, 2019, and extended into the morning of June 19, 2019. Although the complainant, SC, and defendant provided different accounts of what transpired during this period, they did agree that the relevant events occurred at defendant's apartment, that defendant physically assaulted SC, and that defendant sexually penetrated SC multiple times. SC asserted that the sexual penetrations were not consensual, but defendant claimed that the penetrations were consensual. While conceding that he physically battered SC, defendant testified that she had physically assaulted him.

SC and defendant had originally met at work and started dating shortly thereafter. They lived together at defendant's apartment from around March 2019 to May 2019. SC moved out of the apartment after the couple broke up. Defendant texted SC on June 17, 2019, and asked her to come to his apartment. SC went to his apartment the next day, June 18, 2019, at around 3:30 p.m. They stayed at the apartment and talked for a while before going to a restaurant. After they ate dinner, defendant asked SC to return to his apartment. Defendant went back to his apartment, and,

-1-

after some time passed, SC decided to return to the apartment complex where she joined defendant. Both SC and defendant indicated that they became embroiled in an argument in the hallway outside of defendant's apartment, leading to a physical altercation. Defendant acknowledged that he punched SC in the face during the altercation in the hallway. He testified that while in the hallway, he told SC that "she should calm down."

Defendant claimed that he walked away from the fight and went back inside his apartment without SC, that SC knocked on his door a short time later, that the two then made up, and that they had consensual sex before getting into another argument that turned physical. SC testified that defendant dragged her into his apartment, that he sexually penetrated her multiple times without her consent and under the threat of force, and that defendant severely beat SC, punching her in the face. While claiming that SC was being physically assaultive, defendant conceded that he punched SC in the face and also threw her cell phone at her and hit her in the face. SC testified that defendant threatened to kill her and then himself. One of defendant's neighbors testified that she heard a woman screaming in fear that night. And defendant testified that after SC slept for a short period, "she woke up screaming" from pain in her eye.

Eventually, SC was able to leave the apartment and went directly to the hospital. There, doctors collected vaginal and vulva swab samples as part of a rape kit. SC sustained a closed-head injury, swelling around her left eye, and injuries to her retina and iris. She was diagnosed with concussion syndrome. Additionally, as a result of defendant's attack, SC lost most of the vision in her left eye.

At trial, and pursuant to MCL 768.27b, defendant's former girlfriend—not SC—was permitted to testify about two prior acts of domestic violence that defendant had committed against her. She testified that defendant punched her in the face in 2009 and 2011. The former girlfriend acknowledged that defendant did not sexually assault her. Defendant was convicted of kidnapping, multiple counts of CSC-I, and AWIGBH. He was sentenced as outlined earlier. The trial court denied defendant's motion for new trial. He now appeals by right.

## II. ANALYSIS AND RESOLUTION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that there were several instances of ineffective assistance of counsel, entitling defendant to a new trial. Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), the Michigan Supreme Court recited the general principles that govern a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant

must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000). When no *Ginther*[1] hearing is held, as was the case here, "review is limited to errors apparent on the record." *People v Jordan*, 275 Mich App 659, 712; 739 NW2d 706 (2007) (citation omitted).[2] "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted). But "a court cannot insulate the review of counsel's performance by [simply] calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "Initially, a court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks, citation, and brackets omitted). A decision regarding whether to call or question a witness is presumed to be a matter of trial strategy with respect to which we will not substitute our judgment so long as reasonable professional judgment supported counsel's choice. *People v Posey*, 334 Mich App 338, 352-353; 964 NW2d 862 (2020).

### 1. APARTMENT VIDEO SURVEILLANCE CAMERAS

Defendant first asserts that in his apartment building there were video cameras in the hallway leading to defendant's apartment. And defendant argues that his attorney should have pulled the video footage from those cameras for use at trial. As indicated above, a defendant bears the burden of establishing the *factual predicate* for his claim of ineffective assistance, *Carbin*, 463 Mich at 600, and defendant fails to do so in regard to this particular argument. He has not demonstrated that any camera video footage from the hallway existed, that any video cameras were working that night, that any footage from the cameras was saved, that the angle of the cameras would have allowed the events to be seen and recorded, or that the footage would have corroborated his version of events. There was no evidence to contradict the following statement made by the prosecutor at the hearing on the motion for new trial:

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[2] Defendant filed a motion in this Court seeking a remand for an evidentiary hearing on issues related to ineffective assistance of counsel. Defendant did not attach any offers of proof or evidentiary materials to the motion. This Court denied the motion to remand without prejudice to a case call panel determining whether remand is necessary. *People v Dennis*, unpublished order of the Court of Appeals, entered December 1, 2022 (Docket No. 360564).

Your Honor, in the instant case Officer Taylor, who was the detective in charge of the case at the time of the offense, I spoke with him, he indicated there was no video, therefore, nothing was obtained or turned over in discovery, and neither the People nor defendant can manufacture evidence that doesn't exist.

Accordingly, we hold that this claim of ineffective assistance of counsel fails, considering that there was no evidence of deficient performance or prejudice.

## 2. INTERVIEWS BY PRIVATE INVESTIGATOR

Defendant next argues that some of his neighbors were interviewed by a private investigator and informed the investigator that they heard no noise or commotion on the night of June 18, 2019. Defendant has not provided any report by a private investigator summarizing these claimed findings, has not identified the neighbors who were purportedly interviewed, has not indicated when the neighbors were interviewed, and has not described where these neighbors lived in relation to defendant. Nothing in the record supports defendant's assertions. Therefore, we conclude that defendant has once again failed to establish the factual predicate for his claim of ineffective assistance of counsel. We also note that defendant himself testified that he had to tell SC to calm down when they were physically fighting in the apartment hallway and that at one point in the apartment, SC was screaming. Defendant has simply failed to demonstrate deficient performance or prejudice.

## 3. DEFENDANT'S MOTHER'S CLAIM

Defendant next argues that his mother executed an affidavit in which she claimed to have found a used douche in the garbage of defendant's apartment. He contends that trial counsel should have called defendant's mother to testify about finding the douche and should have sent the douche for DNA testing to connect it to SC. Defendant apparently operates from the viewpoint that use of a douche is always in preparation for consensual sex. There is no affidavit from defendant's mother in the record, and there was no trial testimony concerning any douche. Defendant made the claim in the motion for new trial, and the prosecutor noted that defendant's mother had brought a douche to the police station a month after the assault. This argument is purely speculative, evidentiarily unsupported, and concerns unreachable and unreasonable inferences. We agree with the trial court's similar observations on the matter and its belief that the argument is of no consequence to the issues involved in this case. We conclude that defendant has not demonstrated deficient performance or prejudice on this claim of ineffective assistance of counsel.

## 4. OTHER-ACTS EVIDENCE

Defendant next argues that trial counsel failed to adequately or effectively object to the testimony of defendant's former girlfriend concerning prior bad acts perpetrated by defendant. Defendant complains that trial counsel should have more thoroughly asserted that the evidence was inadmissible under MRE 403, which provides that relevant evidence may be excluded if its

probative value is substantially outweighed by the danger of unfair prejudice.[3] We first note that defendant does not actually engage in any analysis under MRE 403, nor even contend that the probative value of the ex-girlfriend's testimony was substantially outweighed by the danger of unfair prejudice. Moreover, the issue was raised at the start of the trial, and defense counsel did in fact object to the admission of the other-acts evidence under MRE 403, although the argument was fairly cursory. The trial court unwaveringly ruled that the evidence was admissible, determining that the testimony was not substantially prejudicial. There is no suggestion that the trial court would have been swayed by a more persuasive argument by counsel.

Considering that defendant himself does not even analyze MRE 403 or argue that the evidence was inadmissible under MRE 403, we cannot conclude that counsel's performance was deficient. See *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015) (counsel need not raise futile or meritless objections to be effective). Additionally, given that defendant admitted to punching SC in the face inside and outside his apartment and that the other-acts evidence concerned defendant punching his former girlfriend in the face, defendant cannot establish the requisite prejudice. In sum, we hold that reversal is unwarranted.

## B. PROSECUTORIAL MISCONDUCT

Defendant claims that the prosecution unconstitutionally suppressed evidence by not testing DNA found on defendant's fingernail swabs, hand swabs, and facial swabs, and by not testing all the DNA found on SC's vaginal swabs. We note that the evidence presented at trial clearly established that all the DNA found on SC's vaginal swabs was accounted for and tested. There was DNA from sperm that came from only one individual, and it was determined that it was 5.28 octillion times more likely than not that the DNA originated from defendant. There were two sets of DNA identified in the vaginal swabs that did not originate from sperm. One set of DNA was 8.23 trillion times more likely than not to have originated from defendant. The other set of DNA was 41.1 septillion times more likely than not to have originated from SC herself. Although defendant's facial, hand, and fingernail swabs were not tested, his buccal, penis, and scrotum swabs were tested.

In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court explained the general principles regarding prosecutorial misconduct:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this

---

[3] MCL 768.27b(1) provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403."

Court must examine the entire record and evaluate a prosecutor's [conduct] in context. [Quotation marks and citations omitted.]

Defendant contends that there was a violation of his constitutional rights under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), depriving him of a fair and impartial trial. The Michigan Supreme Court has held that to prove a *Brady* violation, the defendant must show that "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id.* at 150. "The government is held responsible for evidence within its control, even evidence unknown to the prosecution, without regard to the prosecution's good or bad faith." *Id.* (citations omitted). But "[f]or due process purposes, there is a crucial distinction between failing to disclose evidence that has been developed and failing to develop evidence in the first instance." *People v Anstey*, 476 Mich 436, 461; 719 NW2d 579 (2006). Although the prosecution "is required to disclose evidence that has been developed, it is not required to develop evidence . . . that defendant hopes will provide him with a defense." *People v Green*, 310 Mich App 249, 256; 871 NW2d 888 (2015).

In this case, the prosecution was simply not required to test defendant's facial, hand, and fingernail swabs. Defendant could have requested to have those swabs tested himself, but he never did; therefore, defendant has failed to prove a *Brady* violation. Accordingly, we hold that there was no prosecutorial misconduct.[4] Furthermore, defendant admitted to getting into a physical altercation with SC and having sex with her. It is unclear to us how any DNA collected from the swabs would have been exculpatory, impeaching, or otherwise favorable to defendant in any manner. Thus, on this unpreserved *Brady* argument, we hold that defendant has failed to show that any assumed plain error affected his substantial rights, i.e., he has failed to demonstrate any prejudice. See *People v Burger*, 331 Mich App 504, 516; 953 NW2d 424 (2020).[5]

## C. MOTION FOR NEW TRIAL

Finally, defendant argues that the trial court erred by denying his motion for new trial. The grounds defendant cites in support of his position are the very same grounds raised by defendant in claiming that counsel was ineffective and that prosecutorial misconduct occurred. In light of our rulings rejecting those arguments, we hold that the trial court did not abuse its discretion by denying defendant's motion for new trial. See *People v Hammerlund*, 337 Mich App 598, 615;

---

[4] Defendant also argues that the prosecution improperly withheld or failed to obtain video footage from surveillance cameras in the hallway outside of defendant's apartment. As indicated earlier, defendant did not present any evidence supporting his surveillance-camera claim. Moreover, nothing in the record demonstrates that any purported footage was in the possession of law enforcement or that it was exculpatory. Indeed, the prosecutor specifically informed the trial court that the lead detective told the prosecutor that there was no video.

[5] To the extent that defendant argues that trial counsel was ineffective for failing to have the swabs tested, we find that he cannot establish deficient performance or the requisite prejudice given the immateriality of any DNA connected to the swabs in light of defendant's trial testimony.

977 NW2d 148 (2021) ("This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial.").

We affirm.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly